# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 43

OCTOBER TERM, A.D. 2013

*April 3, 2014*

TRAVELOCITY.COM LP,
PRICELINE.COM INCORPORATED,
HOTELS.COM, LP, HOTWIRE, INC.,
EXPEDIA, INC., ORBITZ, LLC, AND
TRIP NETWORK, INC. (d/b/a
CHEAPTICKETS.COM),

Appellants
(Petitioners),

v.

WYOMING DEPARTMENT OF
REVENUE,

Appellee
(Respondent).

S-13-0078

*W.R.A.P. 12.09(b) Certification from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellants:*
    Lawrence J. Wolfe, P.C., and Brynn A. Hvidston of Holland & Hart, LLP,
    Cheyenne, Wyoming; Jeffrey A. Rossman of McDermott Will & Emery LLP,
    Chicago, Illinois.  Argument by Mr. Rossman.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; Martin L. Hardsocg, Deputy
    Attorney General; Cathleen D. Parker, Senior Assistant Attorney General.
    Argument by Ms. Parker.

*Before KITE, C.J., and HILL, VOIGT,\* BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]     Appellee Wyoming Department of Revenue (Department) directed Appellants, which are on-line travel companies (OTCs), to collect and remit tax on the total amounts they collected from customers booking hotel rooms in Wyoming. Appellants appealed the order to the State Board of Equalization (SBOE), which upheld it. The OTCs petitioned the First Judicial District Court for review, and it certified the case to this Court, which accepted the certification.

[¶2]     Appellants argue that Wyoming's sales tax statutes do not reach the markup they charge for a variety of reasons. They contend that application of Wyoming sales tax to them violates the Dormant Commerce Clause, the Equal Protection Clause, and the Due Process provisions of the United States Constitution. They also urge us to find that it violates the federal Internet Tax Freedom Act. We affirm the State Board of Equalization.

## ISSUES

[¶3]     Appellants raise the following issues, which we have rephrased and regrouped somewhat:[1]

> 1.     Did the SBOE err in finding that the full amount paid to the OTCs for a reservation of a hotel room in Wyoming was taxable by the Department because:
>
> a.     It concluded that the OTCs are "vendors" of lodging services under Wyoming Statute § 39-15-101 *et. seq.*?
>
> b.     It concluded that the amount the OTCs consider to be "online reservation facilitation fees" were instead part of the sales price for "lodging services" under Wyoming's sales tax?
>
> c.     It concluded that the amount the OTCs believe to be a service fee is taxable in Wyoming?
>
> 2.     Does the Department's imposition of sales tax on the full amount the OTCs collect violate the Dormant Commerce Clause of the United States Constitution?

---

[1] In the SBOE proceedings, Appellants argued that the Department is estopped from taking the action it did. They have not raised that issue in this appeal, although the Department did brief it. Despite the fact that some of Appellants' arguments hint at estoppel, we will not address that issue because it is not raised directly.

1

3.	Does imposition of the sales tax on the full amount the OTCs collect violate the Equal Protection Clause of the United States Constitution?

4.	Does imposition of the sales tax on the full amount the OTCs collect violate the Due Process Clause of the United States Constitution?

5.	Does imposition of the sales tax violate the Internet Tax Freedom Act?

[¶4]	The Department generally identifies the same issues, although it frames them in the "deep issue" format recommended by one legal scholar.[2]

## FACTS

[¶5]	The facts of this case are not in dispute. The OTCs are on-line travel companies. They host travel websites through which the public may book hotel rooms, airline reservations, rental cars, and other travel-related services. This appeal involves only tax on the Wyoming hotel rooms reserved through their websites.

[¶6]	The parties agree that none of the OTCs, their employees or their servers are located in Wyoming. They do not own or control any hotels in this state.

[¶7]	Hotels typically employ revenue managers who set and adjust room rates and select the distribution channels necessary to secure reservations. If they anticipate a need to use intermediaries like the OTCs to fill rooms, they enter into agreements to allow them to market reservations for a certain number of rooms at a certain rate. The hotel controls the price and availability of rooms. Major hotel brands have a central reservation system through which the OTCs can determine the rates and available rooms they may offer to potential guests. Hotels without central reservation systems can use the OTCs' extranet service to upload this data. Hotels can increase or decrease the number of reservations available to OTCs or close them out entirely.

[¶8]	The OTCs collect a wide variety of hotel information and publish it on their websites so that travelers can plan trips through one source. Customers can search for lodging using a variety of parameters. The customer must accept the OTCs' terms and conditions, as well as the OTC/hotel cancellation policies and other rules and restrictions.

---

[2] Bryan A. Garner, *The Deep Issue: A New Approach to Framing Legal Questions*, 5 Scribes J. Legal Writing 1 (1994-95).

[¶9]   There are five "models" by which hotel rooms are rented.  The first three are not at issue in this appeal.   First, the hotel may simply rent the room itself, and the entire transaction is taxed at a maximum of 10% under current rates.[3]  Second, a travel agent may book the room for a traveler.  In that kind of transaction, called the "agency model," the hotel charges the traveler for the room and pays tax on the entire room rental, but remits a commission to the travel agent.   The amount of the agent's commission is therefore taxed, because it is paid from the total room rate.   The modified merchant model, the third variant, is similar to the agency model.   In it, the customer pays the OTC to occupy a room with a credit card, and the OTC also collects tax on the full amount of the rental.   The OTC then remits all of the funds received to the hotel, which pays the OTC a commission, and the hotel pays tax on the entire amount paid by the customer to the OTC.

[¶10]  The controversy in this case involves the merchant model, which comprises the majority of the OTCs' business.  In it, the OTC collects the net rate the hotel has agreed upon, the amount of tax estimated on the net rate, and what the OTCs call a "service" or "facilitation" fee.[4]   The putative service fee is a markup from the net rate the hotel has agreed to plus the tax on that base rate.   The parties sharply disagree as to what this difference should be called because it may affect the outcome, and in an effort to use neutral terminology, we will refer to it as "the markup."   If the guest utilizes the reservation, the hotel bills the OTC, and the OTC pays it the net rate plus the estimated tax. The OTC retains but does not pay Wyoming sales tax on the markup.  The hotel pays the state or local taxing authority (in this case Wyoming) the tax due on its net rate.

[¶11]  Under the merchant model, the hotel is not informed of the total amount paid to the OTC by the customer for a reservation.  The customer is not informed of the net rate the hotel has agreed upon or the amount of tax collected upon it.  Without conducting an audit, state and local taxing authorities, including the Wyoming Department of Revenue, cannot determine the basis for the tax collected on each transaction.   Only the OTC knows how much its markup is.

[¶12]  The "opaque" model is also used by certain of the OTCs.  This is a variant of the merchant model.   In it, the customer does not learn the identity of the hotel until the reservation is made and payment is received.  Reservations cannot generally be cancelled and it is nearly impossible to obtain a refund.  The OTC remits the net rate and the estimated tax on that amount before the date of the traveler's stay.  The OTC has the exclusive right to make exceptions to the no-refund policy.  The OTCs retain the markup

---

[3] Wyoming law provides for maximum sales tax of 6%, including local option taxes, and counties may also impose an additional tax of 4% for lodging services. Wyo. Stat. Ann. § 39-15-103(a)(i)(G), § 39-15-203(a)(ii), and § 39-15-204(a)(ii) (LexisNexis 2013). The parties have used the terms "sales" and "lodging" tax interchangeably, as we will.

[4] We also use these terms interchangeably.

and do not pay sales tax on it, so the tax issues are the same as with the merchant model, and they will not be discussed separately.

[¶13]  The following chart illustrates the Department's view of the five models, utilizing a hypothetical net rate of $80.00, tax rate of ten percent, and a hypothetical difference between net rate and what the customer actually pays.

| Model | Gross Amount Paid by Customer | Net Rate Charged by Hotel | Taxes |
|---|---|---|---|
| Direct Rental by Hotel | $100 | $100 | $10 |
| Agency (Travel Agent or OTC) | $100 | $80 | $10 |
| Modified Merchant | $100 | $80 | $10 |
| Merchant and Opaque | $100 | $80 | $8 |

In this example, the OTCs would receive $20.00 in untaxed revenue, resulting in a $2.00 difference in tax paid from that paid under the other models.

[¶14]  The parties agree that although the hotel is obligated by its contract with the OTC to provide a room of a certain type and quality, the hotel assigns the room and charges for any services not included in the rate, including meals, health club access, etc.  The OTC has no voice in the room assignment.  The parties also agree that the customer can only obtain a refund from the OTC under the merchant model – the hotel cannot grant a refund.

[¶15]  The OTCs have been very successful, and their success has not gone unnoticed by state and local taxing authorities. *See, e.g.*, Scott M. Susko and Lucia Cucu, *State and Local Governments Turn to Online Business for Tax Revenue in an Attempt to Remedy Budget Shortfalls*, 19 J. Multistate Taxation and Incentives (Sept. 2009).  As will be addressed in further detail, the taxing authorities generally argue that tax should be paid to them based on the gross amount the customer pays for a room, while the OTCs contend that the markup is not taxable by the state or local government entity in which the hotels are located because it is a service fee.

[¶16]  The Administrator of the Wyoming Department of Revenue's Excise Tax Division met with Natrona County officials, several interest groups, and representatives of Appellees Orbitz and Travelocity in February of 2010.  The OTCs explained the merchant business model and expressed their view that Wyoming could not tax what they call the service fee on a hotel transaction. The Department thereafter directed a number of OTCs to license with Wyoming as vendors and to collect and remit taxes on the full amount paid by customers who reserve rooms in Wyoming.

[¶17] The OTCs appealed the Department's decision to the SBOE. The parties were able to stipulate to some of the facts and to the record to be considered by the SBOE, and therefore simply argued the case rather than presenting live testimony. In a thoughtful 38-page decision containing detailed findings of fact and conclusions of law, the SBOE concluded as follows:

>   1.  Wyoming's sales tax statutes require the Department to impose tax on the entire amount paid by the consumer for a reservation. The statutes also require OTCs to collect this tax and remit it to the Department.

>   2.  Taxation of the entire amount paid by the customer for the reservation does not violate the Dormant Commerce Clause of the United States Constitution.

>   3.  Wyoming's sales tax statutes are not void for vagueness.

>   4.  Wyoming's sales tax statutes do not violate the Due Process or Equal Protection clauses of either the federal or Wyoming constitutions.

>   5.  Wyoming's sales tax statutes do not violate the Internet Tax Freedom Act.

>   6.  The Department is not equitably estopped to collect sales tax on the entire amount paid for the reservation because it has not collected it in the past.

[¶18] Based upon these conclusions, the SBOE affirmed the Department's decision that the OTCs were required to register as vendors and to remit sales tax upon the entire amount paid by customers who reserve lodgings in Wyoming. The OTCs timely petitioned the district court for Laramie County for review of the SBOE decision. The parties then moved the district court for an order certifying this case for direct review under Wyoming Rule of Appellate Procedure 12.09(b). The district court concluded that the case met the criteria set forth in the rule and certified it to this Court, and we accepted it.[5]

---

[5] Rule 12.09 sets the following criteria for certifying a case after a petition for review is filed:

> In determining whether a case is appropriate for certification, the district court shall consider whether the case involves:
>   (1) a novel question;
>   (2) a constitutional question;
>   (3) a question of state-wide impact;
>   (4) an important local question which should receive consideration from the district court in the first instance;
>   (5) a question of imperative public importance; or
>   (6) whether an appeal from any district court determination is highly likely such that certification in the first instance would serve the

## DISCUSSION

## I.    Issues Relating to Wyoming's Sales Tax Statutes

[¶19]  The first set of issues presented by the OTCs requires us to interpret Wyoming's sales tax statutes to determine whether the legislature intended to tax the portion of the gross room rate we have called the markup.  The construction and interpretation of statutes applied by an agency is a question of law, and our standard of review is de novo, as it is for all issues of statutory interpretation. *Lance Oil & Gas Co. v. Wyo. Dep't of Revenue*, 2004 WY 156, ¶ 3, 101 P.3d 899, 901 (Wyo. 2004) (quoting *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue,* 2002 WY 181, ¶ 9, 60 P.3d 129, 135 (Wyo. 2002)); *Rock v. Lankford*, 2013 WY 61, ¶ 17, 301 P.3d 1075, 1080 (Wyo. 2013) (citing *Redco Const. v. Profile Props., LLC,* 2012 WY 24, ¶ 26, 271 P.3d 408, 415 (Wyo. 2012)).

[¶20]  As we have observed:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

> Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

interests of judicial economy and reduce the litigation expenses to the parties.

W.R.A.P. 12.09(b).

6

Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

Whether a statute is ambiguous is a question of law. A statute is unambiguous if reasonable persons are able to agree as to its meaning with consistency and predictability, while a statute is ambiguous if it is vague or uncertain and subject to varying interpretations.

*Redco Const.,* ¶ 26, 271 P.3d at 415-16 (citations & internal quotation marks omitted).

## A.    Wyoming's Taxation System

[¶21]  Before determining the scope of Wyoming's sales tax, we must first review the statutory scheme and the Department's rules and regulations.  The applicable statute imposes tax on "[t]he sales price paid for living quarters in hotels, motels, tourist courts and similar establishments providing lodging service for transient guests." Wyo. Stat. Ann. § 39-15-103(a)(i)(G) (LexisNexis 2013).  Wyoming law also permits counties to impose an additional excise tax of up to four percent on "the sales price paid for lodging services."  Wyo. Stat. Ann. §§ 39-15-203(a)(ii), 204(a)(ii).

[¶22]  The event to be taxed is the sale, *i.e.*, the retail customer's payment in exchange for taxable goods or services. Wyo. Stat. Ann. § 39-15-103(b)(i), (c)(ii); *Buehner Block Co., Inc. v. Wyo. Dep't of Revenue*, 2006 WY 90, ¶ 7, 139 P.3d 1150, 1152 (Wyo. 2006). Wyoming tax law defines "taxpayer" as "the purchaser of tangible personal property, admissions or services which are subject to taxation under this article." Wyo. Stat. Ann. § 39-15-101(a)(x).  The purchaser (or transient guest in this case) is the "taxpayer," who is required to pay tax on the "sales price paid for living quarters." Wyo. Stat. Ann. § 39-15-103(a)(i)(G).

[¶23]  The sales tax is not imposed upon vendors of goods and services. A vendor is, however, required to collect and remit taxes to the Department and is liable for failure to do so. Wyo. Stat. Ann. § 39-15-103(c).  *See Stagner v. Wyo. State Tax Comm'n*, 682 P.2d 326, 328-29 (Wyo. 1984) (holding that incidence of tax on sale of cigarettes was on the retail purchaser and rejecting the argument that the legislature intended to shift incidence

of tax to wholesaler). Under Wyoming's tax code, "vendor" is defined as "any person engaged in the business of selling at retail or wholesale tangible personal property, admissions or services which are subject to taxation under this article." Wyo. Stat. Ann. § 39-15-101(a)(xv).

## B.  OTCs as Vendors

[¶24]  As they have in other jurisdictions, the OTCs argue that they are not "vendors" because they do not qualify under the plain language of the Wyoming sales tax statutes. The SBOE concluded that the OTCs are not "purchasers" of lodging services because the only person who fits the definition of that term in these transactions is the transient guest. No one has challenged that conclusion in this appeal.

[¶25]  In order to be required to remit tax, therefore, the OTC must be a vendor, which, as noted above, "is any person engaged in the business of selling at retail or wholesale tangible personal property, admissions or services which are subject to taxation . . . ." Wyo. Stat. Ann. § 39-15-101(a)(xv).  The OTCS point out that the sales tax statute defines "lodging service" as "the provision of sleeping accommodations to transient guests."  Wyo. Stat. Ann. § 39-15-101(a)(i).  They contend that the dictionary definition of "provision" means "the act or process of providing," that "to provide" is synonymous with "to supply and make available," and that "supply" means to "make available for use," quoting the Merriam Webster Online Dictionary (2010) and the Collins English Dictionary (9th ed. 2009).

[¶26]  From this premise, the OTCs argue that the statute does not by its terms apply to them because they are not hotels and do not provide lodging services – the hotels, they say, do that.  They contend that the Department's own rules support this conclusion because they provide that only "lodging establishments" providing "lodging services" can be liable as "vendors," citing Wyoming Department of Revenue Rules and Regulations, Chapter 2.  They also refer us to the Department's 2010 "Sales, Use, and Lodging Tax Guidelines for the Hospitality Industry," which use terms such as "hotelier," and "lodging facility" to refer to entities which have an obligation to collect tax on lodgings.

[¶27]  The OTCs also correctly note that other courts have held that OTCs are not vendors or in the business of providing lodging services under particular taxing statutes and ordinances.  Those cases include *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) (OTCs are not hotel "operators" because they do not physically provide the rooms and have no role in the day-to-day management of the hotels); *Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 387 (6th Cir. 2009) (OTCs are not accommodation businesses that are similar to hotels and motels because they do not physically control or furnish the rooms they advertise, nor do they

make rooms physically available to guests); and *City of Columbus v. Hotels.com, L.P.,* 693 F.3d 642, 649 (6th Cir. 2012).[6]

[¶28]  For all of these reasons, the OTCs claim that "vendors" must own or possess the lodgings they provide to guests.  Therefore, they conclude, the SBOE erred in finding them to be vendors who must remit tax.

[¶29]  The Department argues that the plain language of the statutes cause excise taxes to fall upon the price paid for hotel rooms, not just upon the lesser amount paid to the hotels. *See* Wyo. Stat. Ann. §§ 39-15-103(a)(i)(G), (c)(i), (c)(ii).  It agrees that the purchaser of services—in this appeal the transient guest—is the subject of the tax.  Wyo. Stat. Ann. §§ 39-15-103(b)(i), (c)(ii).  However, it asserts that the OTCs are vendors who are required to collect and remit the proper amount of tax.  Wyo. Stat. Ann. § 39-15-103(c)(i).  The Department contends that the pivotal question in this appeal is not whether OTCs physically operate hotels, but rather whether OTCs sell hotel rooms at retail.

[¶30]  The Department concedes that the rulings cited by the OTCs are correct so far as they go, but argues that they do not offer meaningful guidance because they involve tax statutes and ordinances which are different from Wyoming's.  They point out that the OTCs' challenges have been successful when the tax statute or ordinance defines vendors as operators of hotels.  They note that the OTCs were successful in Florida, where the tax is imposed upon the privilege of operating a hotel.[7]  They agree that an Alabama court has held that the OTCs cannot be taxed under a statute similar to Florida's, citing *City of Birmingham v. Orbitz, Inc.*, 93 So.3d 932, 935 (Ala. 2012) (citing Ala.Code § 40-26-1(a)).  The OTCs have also succeeded in challenging taxation under ordinances in Ohio (vendor is defined as the "owner or operator of a hotel," Findlay Ord. § 195.03(d)), North Carolina ("retailers" who must collect tax are defined as operators of hotels, etc., N.C. Gen. Stat. § 105-164.4(a)(3)); California ("operator" is the proprietor of a hotel); Texas (person owning, managing, or controlling a hotel must collect tax); and New Mexico (vendor is "a person furnishing lodging).[8]  The Department also concedes that OTCs have

---

[6] We are also referred to a number of state and federal trial court decisions favoring the OTCs' position, including *City of Gallup v. Hotels.com, L.P.*, No. 06-CV-0549, *5-6 (D.N.M. Jan. 30, 2007); *City of Gallup v. Hotels.com*, L.P., No. 07-cv-00644, at *4-5 (D.N.M. Mar. 1, 2010); *City of Philadelphia v. City of Philadelphia Tax Review Bd.*, Mar. Term 2010 No. 00764 (Phila. C.P. Jan. 14, 2011), affirmed *City of Philadelphia v. City of Philadelphia Tax Review Bd.*, 37 A.3d 15, 21 (Pa. Commw. Ct. 2012); *Orange County v. Expedia, Inc.*, No. 48-2006-CA-2104-0, at 18-22 (Orange County Cir. Ct., Jan 20, 2011).

[7]*Alachua Cnty. v. Expedia, Inc.,* 110 So.3d 941, 946-47 (Fla. Dist. Ct. App. 2013); *Orange Cnty. v. Expedia, Inc.,* 2006-CA-2104-0, *27 (Fla. Cir. Ct. June 22, 2012); *Leon Cnty. v. Expedia, Inc.*, 2009 CA 4319 (Fla. Cir. Ct. May 8, 2012).

[8] *City of Findlay v. Hotels.com, L.P,* 441 F.Supp.2d 855, 859 (N.D.Ohio 2006); *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 314-15 (4th Cir. 2009); *Transient Occupancy Tax Cases*, JCCP 4472, *56 (Cal.

9

not been subject to taxation on what they call a service fee in states in which the tax is based on the amounts received by the hotel providing the room.[9]

[¶31] However, the Department contends that the definition of "vendor" under Wyoming's tax statutes is similar to that contained in the statutes and ordinances of states involved in other cases in which the gross amount received by the OTCs was held to be taxable. In *City of Charleston, S.C., v. Hotels.com, LP*, 520 F.Supp.2d 757 (D.S.C. 2007), the OTCs claimed that they were not liable for taxes because they did not physically furnish hotel rooms. The court did not agree that the OTCs were "merely an intermediary between hotels and customers." *Id.* at 767-68. It concluded that the focus of the tax statute was on the entity accepting the consideration and not on the person or organization physically providing the hotel room:

> [T]he core purpose of the Ordinances is to levy a tax on the amount of money visitors to the municipality spend on their hotel rooms or other accommodations. What is relevant, then, is not who is actually performing the upkeep of the room, but rather who is accepting money in exchange for "supplying" the room.

*Id.* at 768. The court further reasoned that if customers go to an OTC website, "use it to book a hotel room, pay the website directly, and never pay the hotel, or interact with the hotel at all until they arrive, the court cannot accept Defendant's assertion that they do not furnish accommodations to customers." *Id.* In response to the OTCs' motion to reconsider, the court again disagreed with the OTCs' claims that they did not furnish rooms to their customers. *City of Charleston, S.C. v. Hotels.com, LP,* 586 F.Supp.2d 538 (D.S.C. 2008).

[¶32] The South Carolina Supreme Court also ruled that the OTCs' hotel transactions were subject to state tax upon the gross proceeds charged. *Travelscape, LLC v. S.C.*

---

Super. Ct. Feb. 1, 2010); *City of Orange, Tex. v. Hotels.com*, No. 1:06-CV-413, 2007 WL 2787985, *5 (E.D. Tex. Sept. 21, 2007) (citing Tex. Tax Code Ann. § 351.002(a)); *City of Gallup v. Hotels.com, L.P.,* No. 06-0549-JC, 2007 WL 7212855, *3 (Dist. N.M. Jan. 30, 2007).

[9] *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.Com,* 590 F.3d 381 (6th Cir. 2009) (Ky. Rev. Stat. Ann. § 91A.390(1) imposed tax on amounts charged by entities "doing business as . . . hotels); *City of Philadelphia v. City of Philadelphia Tax Review Bd.*, No. 00764 (Pa. Ct. Com. Pl. Jan 14, 2011) (Philadelphia Code § 19-2402(1) taxed "the consideration received by each operator of a hotel"); *Mayor & City Council of Baltimore v. Priceline.com, Inc.*, Case No. MJG-08-3319, 2011 WL 9961251, *7 (D. Md. Aug. 2, 2011) (tax imposed by original ordinance on the amount paid to the "owner or operator of a hotel"). In the last case, a revised Baltimore ordinance expanded the definition of "owner or operator" to include brokers, service providers or other intermediaries with which a hotel has contracted to arrange for rental of a hotel room. The court concluded that sales tax was due on the gross amount paid to Priceline. *Id.* at *8.

*Dep't of Revenue*, 705 S.E.2d 28, 32-33 (S.C. 2011). The court rejected the OTCs' contention that they did not operate hotels and that they therefore did not "furnish" rooms. *Id.* at 34-35. It reasoned that the tax was not imposed upon the operators of hotels, but instead upon those who received money in exchange for selling rooms. *Id.* at 35.

[¶33] The United States District Court for the Northern District of Illinois likewise rejected the OTCs' argument, explaining that: "To determine the kind of tax applicable to a particular transaction, the Court examines the 'totality of the transaction,' not the labels the parties give to it." *Vill. of Rosemont, Ill. v. Priceline.com Inc.*, 09 C 4438, *8, 2011 WL 4913262, *5 (N.D. Ill. Oct. 14, 2011). The ordinance in that case required the owner of a hotel or motel to collect the tax, but defined "owner" broadly to include any person "receiving the consideration for the rental of such hotel or motel room." *Id.* at *2, 2011 WL 4913262 at *1.

[¶34] The District of Columbia Superior Court reached the same conclusion, interpreting statutes generally similar to Wyoming's. *District of Columbia v. Expedia, Inc.,* 2011-CA-002117-B (D.C. Super. Ct. Sept. 24, 2012). The statute applied to all vendors "for the privilege of selling certain selected services," which was defined to include hotel room. It distinguished between providing lodging and selling lodging as a service, stating that "the more important observation is that it is not the provision of the service itself that is taxable. Rather, § 47-2001 explicitly levies the tax on the transaction; the 'sale or charge' for the service." *Id.* at *13. The court added, "[T]he tax is levied on the overall monetary value of the transaction." *Id.* at *14.

[¶35] It is clear that whether the putative service fee is taxable because the OTCs are vendors is governed by the precise language of the taxing ordinance or statute. Even though the OTCs do not physically assign rooms and hand out keys, they contract with the hotels that do, and they have authority to rent those rooms at a price they establish. As we have already noted, the Wyoming sales tax statute applies to "the sales price paid" for lodging services. This language compels the same result as the cases just cited.

[¶36] The contracts between the OTCs and hotels also support the argument that the OTCs are vendors under Wyoming tax law. The hotels commit or assign a certain number of specific types of rooms to the OTCs at a discount rate for subsequent sale. The OTCs retain the right to sell the right to occupy the room at a markup. Although they differ in precise verbiage, all of the contracts contain generally similar terms.

[¶37] Before the OTC sales tax cases arose around the nation, the OTC/hotel contracts used language indicating that OTCs sold rooms. In 2003, Appellant Orbitz referred to committed rooms as "inventory," and agreed that it would "sell Rooms, on a prepaid basis." Hotwire's early contracts indicated that it would "sell rooms" and that hotels would "provide rooms for sale." Travelocity contracts allowed it to use the net rates "to

11

sell Rooms." Hotels.com entered into agreements to "offer and sell unbundled Rooms" that were referred to as inventory. Priceline contracts indicated that it would "sell Hotel Rooms." Press releases from the pre-tax conflict period describe increasing sales of hotel rooms and other travel services.

[¶38] The OTCs' representations to the Securities and Exchange Commission before the sales tax issues arose around the country are also telling. The following is from a letter containing Priceline's comments on its Forms 10-K and 10-Q for 1984:

> The Company does have unfettered latitude in establishing price. The Company is unconstrained in choosing the gross margin or mark-up that it charges for its services. . . .
>
> .   .   .
>
> [T]he Company is able to charge its customers a significant mark-up versus cost and generate substantial gross profits. The Company's gross margins are well in excess of the types of fixed commissions that a typical travel agent earns for selling a widely available retail product.

This language is consistent with a sale.

[¶39] The 10-K forms filed by Orbitz in 2003 and Travelocity in 2001 both describe their attempts to obtain inventory, acknowledging at the very least that they own something which can be sold. Similar disclosures were filed by Expedia, Hotels.com, and Priceline during this period. After the tax litigation began around 2006, the OTCs began to characterize themselves as seeking reservations on a customer's behalf and receiving a service fee for their efforts, as they do in their brief in this case. However, the OTCs admit that the merchant model still operates exactly as it did before.

[¶40] Finally, a dissatisfied customer must seek a refund from the OTC and not the hotel under the merchant model. Customers may only cancel reservations through the OTC contact points, and not through the hotel. Under the opaque model, only the OTCs have authority to determine exceptions to the no-refund policy. The OTCs, not the hotels, thus control the financial aspects of the transaction completely.

[¶41] The Department's position is supported by the specific language of the Wyoming sales tax statutes, persuasive case law from other state and federal courts, and the OTCs' own description of their business before the sales tax litigation created incentives to characterize the transactions otherwise. We therefore conclude they are "vendors" for

purposes of the Wyoming sales tax while operating under the merchant or opaque models.[10]

## C.    Claimed Service Fee vs. Rental Charge

[¶42]  In a closely-related argument, the OTCs claim that the law does not require them to pay tax on the markup because it is a separate facilitation or service fee.  They argue that the sales tax is only levied upon the "sales price" paid for a hotel room.  Wyo. Stat. Ann. § 39-15-103(a)(i)(G).  They contend that the traveler really pays the OTCs for the service they provide in helping him find a hotel, as he can research, plan a trip, and book the necessary travel arrangements.

[¶43]  The OTCs point to Department Rules stating that "[t]he total amount charged transient guests for board or room or both is subject to the sales tax and any local option lodging tax."  Rules, Wyo. Dep't of Revenue, *Sales & Use Tax*, ch. 2 § 15(r)(i) (2006).  The items taxed must be "furnished in connection with the lodging service," such as "room service meals."  *Id*.  Charges for facilities not used for lodging, such as meeting rooms, sample rooms, and ballrooms are exempt from the tax.  They argue that the sales tax is limited to the "sales price paid for living quarters," meaning the net rate the hotel receives from them.  The OTCs also point out that they collect money from travelers before the room will be used, separating their receipt of the fee from the lodgings actually provided.  They contend that there is no room rental to tax when they receive the money.

[¶44]  The Department again points to the statutory language, arguing that it is clear.  Wyo. Stat. Ann. § 39-15-101(a)(viii)(A) defines "sales price" as "the total amount or consideration, including cash, credit, property and services for which personal property or services are sold . . . ."  The Department's rules further specify that, "[t]he **total amount** charged transient guests for board or room or both is subject to the sales tax and any local option lodging tax."  Rules, *supra*, ch. 2, § 15(r)(i) (emphasis added).  Rules adopted pursuant to an agency's statutory authority, and properly promulgated, have the force and effect of law.  *State ex rel. Dep't of Revenue v. Buggy Bath Unlimited, Inc*. 2001 WY 27, ¶ 19, 18 P.3d 1182, 1188 (Wyo. 2001).

[¶45]  The Department reminds us that in *Lance Oil & Gas Co. v. Wyoming Department of Revenue,* this Court explained that "price" meant "the full amount paid." *Lance Oil,* ¶ 13, 101 P.3d at 903.  The SBOE cited that case in its decision, concluding that "[b]ecause a transient guest purchases living quarters, the amount paid by a transient guest for living quarters is subject to the tax."

---

[10] Appellants refer us to the recent Montana district court decision in *Montana Dep't of Revenue v. Priceline et al.,* CDV-2010-1056 (D.Ct. Lewis & Clark Cnty. Mar. 6, 2014).  In that case the district court held that the Montana Department of Revenue could not tax the facilitation or service fee under statutes which are similar to Wyoming's.  The court's analysis was limited, and we did not find it persuasive.

[¶46] In addressing an almost identical definition of sales price, the Superior Court of the District of Columbia explained that "the 'sale' is the transaction or exchange that occurs between the parties, and the 'charge' is most naturally read to mean 'the price asked for something.'" *District of Columbia v. Expedia, Inc.*, *supra,* *13 (Sept. 24, 2012 order). The court rejected the OTCs' redefinition of the sales price as something less than the total consideration paid by the customer.

[¶47] In addition, the OTCs bundle all charges to prevent customers from learning the net rate they have paid to reserve the room. Department Rules require that "[t]he entire invoice amount shall be subject to the sales/use tax if the exempt charges are not separately shown and distinguishable from taxable charges." Rules, *supra*, ch. 2, § 9(a).[11]

[¶48] The OTCs argue in effect that the putative facilitation or service fee is an exception from sales tax. As we have previously held, "[w]hen interpreting tax statutes, there is a presumption against granting exceptions and in favor of taxation." *Laramie Cnty. Bd. of Equalization v. Wyo. State Bd. of Equalization*, 915 P.2d 1184, 1190 (Wyo. 1996). The OTCs have not identified an applicable statutory exception.

[¶49] Other tribunals have rejected the OTCs' claim that the facilitation fee is exempt from sales tax. In *Travelscape, LLC, v. S.C. Dep't of Revenue*, No. 08 ALJ 17-0076-CC, 2009 WL 769017 (S.C. Admin. Law Ct., Feb. 12, 2009), *aff'd Travelscape, LLC, v. S.C. Dep't of Revenue*, 705 S.E.2d 28 (S.C. 2011), that administrative body ruled that a "facilitation fee" was subject to tax. It explained that "[e]ven if Petitioner's business is characterized as a 'service,' the service it provides is by no means unrelated to the rental of the hotel room." *Id*. at *13. The South Carolina Supreme Court affirmed that conclusion, holding that "[b]ecause the cost of services is specifically included in the definition of gross proceeds of sales, we find the fees retained by Travelscape for its services are taxable as gross proceeds." *Travelscape,* 705 S.E.2d at 33.

[¶50] The District of Columbia Superior Court similarly concluded that "[t]he cost of any ancillary services provided as part of the otherwise taxable sales transaction is includable within the sales price . . . . The statute is designed to ensure taxation applies to the entirety of the services being taxed." *District of Columbia v. Expedia, Inc.*, *supra,* *14 (Oct. 12, 2011 order). An Illinois federal district court also found that the full amount of the customer's payment was subject to tax in *Village of Rosemont, Ill. v. Priceline.com Inc.*, 09 C 4438, 2011 WL 4913262 (N. D. Ill. Oct. 14, 2011). That court found that "[w]hen the substance of a transaction is the sale or use of property and the service provided is merely incidental to it, the entire transaction is subject to a sales or use tax." *Id.* at *9, 2011 WL 4913262 at *5. The court continued that "[the OTCs']

---

[11] The Department referred us to the 2006 version of this rule. It was amended in 2012, but the amendment did not change its meaning.

facilitation of travel-related services . . . are incidental to the predominant purpose of the online transaction – the rental of a hotel room." *Id.*

[¶51] Other courts have pointed out that any other interpretation would permit hotel operators to evade sales tax:

> What makes far more sense is that the drafters intended the room occupant to pay tax on the amount she actually paid. A contrary holding, after all, would open up a potentially gaping loophole: a hotel operator could simply incorporate a shell entity or make some other similar arrangement, rent the hotel rooms to the entity for a nominal amount, and then re-rent the rooms to consumers, who would be taxed only on the nominal sum paid by the side entity to the operator. This tactic—permissible under the continuation of Defendants' logic—would place the hotel operator at a competitive advantage, because it would either increase her profit margins or lower the cost of her rooms relative to her competitors. However, it would at the same time almost entirely eviscerate the Ordinance, and it cannot be what the drafters had in mind.

*City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840-DRH, 2006 WL 6319817, *5 (S.D. Ill. July 12, 2006); *see also Columbus, Ga. v. Expedia, Inc.*, No. SU-06-CV-1794-7, *51, 2008 WL 4448801 (Ga. Super. Ct. Sept. 22, 2008) (indicating that hotels might avoid taxes through token payment to "collecting agent"), *aff'd as modified, Expedia, inc. v. Columbus, GA*, 681 S.E.2d 122 (Ga. 2009); *City of Chicago, IL v. Hotels.com,* No. 2005 L. 051003, *19 (Ill. Cir. Ct. June 21, 2013) (concluding that the OTCs have in fact created a shell game through use of the merchant model); *N.M. Taxation & Revenue Dep't v. Barnesandnoble.com, LLC,* 303 P.3d 824 (N.M. 2013) (not permitting on-line company to avoid tax by creating a separate sister company for on-line purposes).

[¶52] The District of Columbia Superior Court concluded that the OTCs' theory could result in no tax due from anyone, a result clearly not intended by those drafting the legislation. "No monetary transaction ever occurs between the hotels and the ultimate purchaser and thus there is no sale, by the statutory definition, to tax. No tax would ever be due on either of the transactions, a result plainly at odds with the structure and history of the act." *District of Columbia v. Expedia, supra*, *16 (Oct. 12, 2011 order). The same is true of Wyoming's tax structure.

[¶53] We find these authorities persuasive. Transient guests cannot obtain a hotel room through an OTC using the merchant model without paying the price they set, and therefore all charges for services are "charges by the seller for any services necessary to

15

complete the sale," which are not deductible from the taxable "sales price." Wyo. Stat. Ann. § 39-15-101(a)(viii)(A)(III). Anyone with internet access can find hotel rooms using the OTCs' websites, and he will pay nothing to do so, unless he actually decides to reserve a room. The "service," therefore, is free – the customer pays for a room. The OTCs cannot change the nature of a payment by calling it something else in their contracts.

[¶54] We see little difference between these transactions and sales by certain brick and mortar merchants. A customer looking for a particular type of good may contact a local merchant for help in locating what he needs. The merchant may show the customer samples or catalogs to help him select a product, order it from a supplier, mark it up to earn a profit, and sell it to the customer. The merchant could not seriously argue that he is entitled to call the markup a "service fee" separate from the sales price.

[¶55] We conclude that the SBOE correctly found that the legislature intended the entire amount the OTCs charge a customer to be subject to sales tax. The markup is not exempt as a service or transaction fee because it is part of the sales price.

## D.    OTC Sales as Subject To Wyoming's Taxing Authority

[¶56] The OTCs contend that the transactions they enter into with customers are not intended to be taxed by Wyoming's tax statutes. They believe that the sales tax is intended to reach a "quintessentially local transaction," the rental of a hotel room in the State of Wyoming. They correctly point out that their sites are more often than not used by persons who do not reside in Wyoming, and as already noted, that their personnel and servers are located in other states. The only thing that occurs in the state is the hotel's provision of a room to the traveler, on which tax has been collected (by the OTCs), paid to the hotel, and remitted by the hotel to the Department.

[¶57] They also argue that Wyoming's tax sourcing statutes compel the same conclusion. Wyo. Stat. Ann. § 39-15-104(f)(i)(A) provides that when a "product is received by the purchaser at a business location of the seller," the sales tax must be sourced to "that business location." If a product is not received by the purchaser at the seller's business location, the sale must be sourced to the location where receipt by the purchaser occurs. *Id.* at (f)(i)(B). To "receive" or "receipt" means "making first use of services." *Id*. at (f)(i)(F). From this, the OTCs argue that what they claim is a service fee is not taxable because it is received outside of Wyoming, while the lodgings themselves are the only thing received here. They contend that the sourcing rules, if interpreted as the Department has, could make the entire transaction immune from Wyoming sales tax because there would be no transaction between the hotel and the guests, which is all they claim Wyoming can tax. This, they contend, cannot be what the legislature intended.

[¶58] We do not find this argument persuasive. The term "product" includes services. Wyo. Stat. Ann. § 39-15-104(f)(xvi)(C). We have already concluded that the OTCs sell the right to occupy rooms in Wyoming. That service is delivered in Wyoming, and it is taxable here under the sourcing rule.

## E. Board's Deference to the Department's Statutory Interpretation

[¶59] The OTCs argue that the SBOE erred in deferring to some degree to the Department's decision to tax the entire amount paid by customers to rent hotel rooms in Wyoming as the interpretation of a statute by an agency charged with administering it. We do not find it necessary to address this issue. We have interpreted the applicable statutes de novo and arrived at the same conclusion the SBOE did without deferring to the Department's analysis.

## F. The Sales Tax As Ambiguous

[¶60] The OTCs argue that tax statutes must be construed strictly against the taxing authority and that they will not be extended unless they contain plain language coupled with a clear legislative intent, citing *Amoco Prod. Co. v. Wyo. Dep't of Revenue*, 2004 WY 89, ¶ 18, 94 P.3d 430, 438 (Wyo. 2004), which in turn cites *Chevron U.S.A. Inc v. State*, 918 P.2d 980, 985 (Wyo. 1996). Although they contend that the sales tax statutes are clear, they claim in the alternative that they are ambiguous if they can be construed against them in spite of the reasonable interpretation they urge upon us in this appeal. They believe the Department's failure to tax them sooner than it did is an indication of its uncertainty as to the scope of its authority.

[¶61] The *Amoco* and *Chevron* cases deal with extension of taxing statutes by implication. The basic rule was restated in *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 43, 154 P.3d 331 (Wyo. 2007):

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

*Id.* at § 24, 154 P.3d at 339 (citation omitted). *Cf.* 3A Norman J. Singer and J.D. Sambie Singer, *Sutherland Statutory Construction* § 66.2 (7th ed. updated 2013) ("tax laws ought to be given a reasonable construction, without bias or prejudice against either the

taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve.").[12]

[¶62] Wyoming's tax statutes are not ambiguous when read in their entirety and *in pari materia.* We do not find the Department or SBOE to have extended them by implication. We instead find that the Department applied the statutes in accordance with their express terms.

## G.    Double Taxation

[¶63] The OTCs argue that application of the above rules may result in double taxation, as in their view the hotels also remain liable for tax on the rooms rented through their websites. In its brief, the Department compares the OTC to a retail vendor and the hotel to a wholesale vendor – *i.e.,* in its view hotels "sell" rooms to the OTCs for resale at a markup, which we have found to be correct. The OTCs claim that the Department's position would require both the retailer and wholesaler to collect and remit tax. They are apparently concerned that the Department will attempt to collect the entire amount of tax due on previous transactions from them, even though the hotel has already paid tax on its net rate.

[¶64] As we interpret the Department's position and the SBOE decision, the OTCs are responsible for collecting tax on the entire amount paid by customers in the future. In its briefing, the Department concedes that it can only collect the tax due on the difference between gross rate and the net rate plus tax on past transactions. The Department may do so under the sales tax statutes, and the complications resulting from the OTCs' failure to collect and pay tax in the past do not prevent an application of the tax to past and future transactions.

## II.    Validity of the Wyoming's Sales Tax Under the Dormant Commerce Clause

[¶65] The OTCs contend that if the Wyoming sales tax applies to the markup, the portion of the price they consider to be a service fee, then it violates the Dormant Commerce Clause of the United States Constitution and is unenforceable as an unreasonable interference with interstate commerce. The Commerce Clause is contained in Article 1, Section 8, Clause 3 of the United States Constitution, and it grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. 1, § 8.

[¶66] The Commerce Clause has been held to have a negative corollary. This negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that

---

[12] The rule against exceptions and the rule against extension by implication reinforce the requirement that we must apply tax statutes as they are written.

discriminates against or unduly burdens interstate commerce and "thereby imped[es] free private trade in the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997) (quoting *Reeves, Inc. v. Stake,* 447 U.S. 429, 437, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980)). Under the Articles of Confederation, state taxes and duties hindered and suppressed interstate commerce, and the Framers intended the Commerce Clause to be a cure for these structural ills. *See generally The Federalist* Nos. 7, 11 (A. Hamilton) (cited in *Quill Corp. v. N. Dakota by & through Heitkamp*, 504 U.S. 298, 312, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91 (1992)). The Commerce Clause and the nexus requirements we are about to address are informed not so much by fairness to taxpayers as by structural concerns about the effects of state regulation on the national economy. *Quill Corp., id.* The advent of the internet, which allows merchants to send information to every jurisdiction in the world, has created dormant commerce clause complications unimaginable a few decades ago. *See, e.g.*, Jack L. Goldsmith, Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785 (2001); Bradley W. Joondeph, *Rethinking the Role of the Dormant Commerce Clause in State Tax Jurisdiction*, 24 Va. Tax Rev. 109 (2004).

[¶67] The parties agree that a state or local tax does not violate the Commerce Clause if it meets four requirements identified in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977); *see also Quill Corp.*, 504 U.S. at 310, 112 S. Ct. at 1912. Those requirements can be summarized as follows:

1. The tax must be applied to an activity with a substantial nexus to the taxing authority.
2. It must be fairly apportioned.
3. It cannot discriminate against interstate commerce.
4. It must be fairly related to the services provided by the State.

## A. Substantial Nexus

[¶68] Appellants argue that Wyoming lacks a nexus with the transactions that result in rooms being rented in Wyoming because the sale occurs outside the state and therefore outside Wyoming's jurisdiction to tax. Although they acknowledge that the Department only seeks to tax transactions involving hotel rooms in Wyoming, they contend that the sale itself must occur in the jurisdiction seeking to tax it. They emphasize the undisputed fact that the servers used to complete the transaction are not located in Wyoming, and that the transfer of funds occurs in another state well before the customer will actually occupy the room.

[¶69] In support of this argument, they cite *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 220-331, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944). In that case, Tennessee corporations sold machinery from their places of business in Tennessee to purchasers in Arkansas. Arkansas levied a sales tax on the transaction. The United States Supreme Court held

that Arkansas could not tax the sale because it occurred in Tennessee, although it might have imposed a use tax on the enjoyment of the object purchased. *Id.* at 330-31, 64 S.Ct. at 1025-26.

[¶70] Commerce Clause nexus has historically required some physical presence within the taxing jurisdiction. *Quill Corp.,* 504 U.S. at 310-13, 112 S.Ct. at 1912-13. A taxpayer's physical presence can be established by having independent contractors, agents, or representatives conducting business within the state on behalf of an out-of-state taxpayer. *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue,* 483 U.S. 232, 250, 107 S.Ct. 2810, 2821, 97 L.Ed.2d 199 (1987); *Scripto, Inc. v. Carson,* 362 U.S. 207, 210-12, 80 S.Ct. 619, 621-22, 4 L.Ed.2d 660 (1960). In the case of tax on an activity, there must be a connection to the activity itself, rather than a connection only to the individual or corporation the state seeks to tax. For example, if a company has its principal office in State A, but provides services only in State B, allowing both states to tax the money paid for the service could result in "severe multiple taxation." *Allied-Signal, Inc. v. Dir., Div. of Taxation,* 504 U.S. 768, 777-78, 112 S.Ct. 2251, 2258, 119 L.Ed.2d 533 (1992). The state's power to tax individual or corporate activity must therefore be justified by the protection, opportunities, and benefits the state confers on that activity. *Id*.

[¶71] More recently, courts have held that a nexus exists when a business's activities establish and maintain a market within the taxing state. *Lamtec Corp. v. Dep't of Revenue*, 246 P.3d 788, 795 (Wash. 2011) (citing *Tyler Pipe*, 483 U.S. at 250-51, 107 S.Ct. at 2821). This principle, as recognized in the *Tyler Pipe* case, is referred to as "attributional nexus," meaning "the attribution of certain in-state activities of one entity to another out-of-state entity with no other contact with the state." John B. Harper, *Nexus: Is it Contagious? Physical Presence by Hook or Crook—Origins of Attributional Nexus and Its Application to Sales and Use Taxes—Part I of II,* 26 J. State Taxation 19 (No. 4, May-June 2008).

[¶72] In affirming the validity of a tax assessment against an out-of-state taxpayer under an attributional nexus standard, the *Tyler Pipe* court acknowledged that Tyler Pipe had no office, no property, and no employees residing in the State of Washington. 483 U.S. at 249, 107 S.Ct. at 2821. However, the Court rejected Tyler Pipe's nexus challenge on grounds that it used independent contractors rather than employees.

> As a matter of law, the Washington Supreme Court concluded that this showing of sufficient nexus could not be defeated by the argument that the taxpayer's representative was properly characterized as an independent contractor instead of as an agent. We agree with this analysis.

*Id.* at 250, 107 S.Ct. at 2821. *See also, Scripto, Inc.,* 362 U.S. at 211, 80 S.Ct. at 621 (upholding the assessment of tax against a Georgia company filling orders in Florida

when the "only incidence of this sales transaction that is nonlocal is the acceptance of the order.").

[¶73] Lamtec Corporation manufactured insulation and vapor barriers in New Jersey and sold them nationwide. It sold over $9 million worth of products in Washington over a six-year period. Its salesmen visited Washington two or three times per year. Washington sought to tax the sales made to its citizens. Lamtec argued that it had to have a physical presence in Washington for its sales to be taxed. *Lamtec Corp.*, 246 P.3d at 790.

[¶74] The Washingon Supreme Court concluded that Lamtec's activities there satisfied the physical presence requirement: "It does not require a 'presence' in the sense of having a brick and mortar address within the state." *Id.* at 794-95. The court further concluded that the qualifying activity did not have to be conducted by a business employee: "We do not see a material difference whether the activities are performed by a staff permanently employed within the state, by independent agents contracted to perform the activity within the state, or persons who travel into the state from without." *Id.* at 795. "[T]he crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in [the] state for the sales." *Id.* (quoting *Tyler Pipe*, 483 U.S. at 250-51, 107 S.Ct. at 2821); *see also Arco Bldg. Sys., Inc., v. Chumley*, 209 S.W.3d 63, 74-75 (Tenn. Ct. App. 2006) (holding that "the trial court did not err in considering Arco's use of the in-state manufacturer in determining that Arco has a 'physical presence' in Tennessee"); *State v. Dell Int'l, Inc.*, 922 So.2d 1257, 1265 (La. Ct. App. 2006) ("[H]aving BancTec contracted to provide on-site repair services on Dell computers in this state was highly critical to Dell's ability to . . . maintain a market in this state."); *Orvis Co., Inc. v. Tax App. Trib. of State of N.Y.*, 654 N.E.2d 954, 960-61 (N.Y. 1995) (explaining physical presence can be established through the conduct of economic activities in the taxing state performed by the vendor's personnel or on its behalf).

[¶75] There are two possible nexuses in this case: (1) contractual relationships between the OTCs and Wyoming hotels, and (2) contractual relationships with "affiliates" or "partners" located in Wyoming, which work with the OTCs to rent their inventory of Wyoming hotel rooms.

[¶76] There is no dispute that the OTCs' customers are able to rent a Wyoming hotel room through the OTCs. The OTCs contract with hotels and specify the terms upon which the hotels must accommodate customers, including requiring them to provide rooms equal to those assigned to guests who book directly with the hotels. The hotel staffs provide the services necessary for customers to utilize their rooms. The Department argues that this creates an agency relationship, meaning that the OTCs would have a physical presence in the state through these agents. The OTCs deny any such relationship.

21

[¶77]  The OTC contracts do not characterize the hotels as agents.  However, the United States Supreme Court has observed that permitting "contractual shifts" by calling salesmen in Florida "independent" to make a constitutional difference would lead to "a stampede of tax avoidance."  *Scripto, Inc.*, 362 U.S. at 211, 80 S.Ct. at 622.  That Court, like Judge Learned Hand in *Bomze v. Nardis Sportswear*, 165 F.2d 33, 36 (2d Cir. 1948), did not believe "that it was important that the agent worked for several principals." *Scripto, Inc.*, 362 U.S. at 211, 80 S.Ct. at 622.  It described the proper test as "simply the nature and extent of the activities of the appellant in Florida."  *Id*.

[¶78]  Other courts have rejected the OTCs' nexus argument.  As the trial court explained in *Columbus, Ga. v. Expedia, Inc.*: "Expedia has stepped into the shoes of the hotels as the collecting agent for hotel occupancy taxes, and it is doing so pursuant to the terms of its contracts."  *Columbus, Ga. v. Expedia, Inc*., *supra,* *45.  The *City of Chicago* court observed that, "[t]he contractual relationship between the hotels and OTC's [sic] are, by definition, governed by the rules of agency." *City of Chicago*, *supra,* *28.  The South Carolina Supreme Court explained that "[f]or Commerce Clause nexus purposes, it simply does not matter that Travelscape specifically disclaims any agency relationship with the hotels in the contracts it enters into.  Accordingly, we find Travelscape has a physical presence within South Carolina [based on its relationship with hotels]." *Travelscape, LLC*, 705 S.E.2d at 37 (citation omitted).

[¶79]  In rejecting the OTCs' argument that they had no nexus, the South Carolina Supreme Court relied on facts indicating that: 1) the OTCs entered into contracts with South Carolina hotels for the right to offer reservations across the state; 2) the hotels agreed to accept a discounted rate for reservations made on the OTCs' websites; and 3) the customers actually stayed at hotels within the state.  *Id.*  "Like the corporations in *Tyler Pipe* and *Scripto,* the services provided by the hotels are significantly associated with Travelscape's ability to establish and maintain a market in South Carolina for its sales." *Id.*  The court recognized that the OTCs would be unable to conduct any business in the state without the hotels actually providing the sleeping accommodations in the state.  *Id.*  Even a witness for the OTCs, Dr. Chekitan Dev, admitted that "[a]n OTC cannot exist without the hotel because they [sic] have nothing to sell."

[¶80]  The court in the *City of Chicago* case referred to above also ruled that the OTCs had substantial nexus with the taxing jurisdiction. *City of Chicago, supra,* *30-32.  It outlined four factors establishing nexus: 1) the tax was borne by a lessee of the Chicago hotel accommodations; 2) the purpose of the online transaction was to rent property in Chicago; 3) the services provided by the Chicago hotels were "significantly associated" with the OTCs' ability to "establish and maintain a market in Chicago;" and 4) the OTCs could not conduct business in Illinois without the local hotels.  *Id.*

[¶81]   The OTCs also have "partners" or affiliates located in Wyoming.  An example of the OTCs' use of a partner affiliate is Travelocity's agreement with the Cheyenne Area Convention and Visitors' Bureau.   Consumers can visit the bureau's website (www.cheyenne.org) to book Wyoming hotel rooms.  When a visitor does so, he uses a booking engine owned by a division of Travelocity.com.  Travelocity pays the bureau a commission for every travel product sold by this means.

[¶82]   Other courts have found these kinds of relationships sufficient to establish the nexus required by *Complete Auto*.  Amazon.com offers a similar affiliate program called the "Associates Program" through which third parties agree to place links on their own websites that direct users to Amazon's website.  *Amazon.com LLC v. N.Y. State Dep't of Taxation & Finance*, 877 N.Y.S.2d 842, 845 (N.Y. Sup. 2009).  Like the OTCs' partner affiliates, Amazon's associates earn commissions from sales resulting from the link.  Overstock.com also has a similar affiliates program.  *Overstock.com, Inc. v. N.Y. State Dep't of Taxation & Fin.*, 987 N.E.2d 621, 622-23 (N.Y. 2013).  Both entities claimed that the associates or affiliates were third-party contractors and that nexus was not adequate for purposes of the Commerce Clause.  *Id*. at 625; 877 N.Y.S.2d at 849.  The court in the Overstock case found a sufficient nexus because "through these types of affiliation agreements, a vendor is deemed to have established an in-state sales force." 987 N.E.2d at 626.  The court also considered it significant that the vendor was not required to pay the taxes out of its own pocket, but that the entities instead "are collecting taxes that are unquestionably due." *Id.*  The *Amazon.com* court arrived at the same conclusion.  877 N.Y.S.2d at 850.

[¶83]   The facts the above courts relied upon to find a nexus through relationships with hotels or affiliates and partners are also found in this case.  We conclude that these relationships provide a sufficient nexus to allow Wyoming to tax the rental of Wyoming hotel rooms under the first prong of the *Complete Auto* test.

## B.      Fair Apportionment

[¶84]   The OTCs argue that the tax the Department seeks to levy on their sales is not fairly apportioned under Commerce Clause analysis.  A tax must be both internally and externally consistent.  *Goldberg v. Sweet*, 488 U.S. 252, 261, 109 S. Ct. 582, 589, 102 L.Ed.2d 607 (1989).  It must be structured so that if every state were to impose an identical tax, multiple taxation would not result in order to satisfy the internal consistency test.  *Id*.  External consistency requires that a state tax only that portion of the interstate activity which reasonably reflects that state's portion of the activity being taxed.  *Id*. at 262, 109 S.Ct. at 589 (citing *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 169-70, 103 S.Ct. 2933, 2942-43, 77 L.Ed.2d 545 (1983)).

[¶85]   The OTCs contend, in a variant of their nexus argument, that only the jurisdiction in which the sale takes place can tax the entire transaction, while other jurisdictions can

impose only use taxes having a credit mechanism for sales tax already paid. They rely for this proposition on *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 190, 115 S. Ct. 1331, 1341, 131 L. Ed. 2d 261 (1995), and *United States v. Edmonson County, Kentucky*, 2001 U.S. Dist LEXIS 17660 (W.D. Ky. Oct. 1, 2001).

[¶86]  The Wyoming sales tax is internally consistent as the Department has applied it. The statute only taxes the sales price of hotels rooms located in Wyoming.  If the other 49 states had the same statute, only Wyoming would impose its sales tax on rooms rented here.  The South Carolina Supreme Court stated the obvious in *Travelscape, LLC*: "If every State imposed a similar tax on accommodations provided within its boundaries, no multiple taxation would occur because the same accommodations cannot be furnished in two different states at one time." *Travelscape, LLC,* 705 S.E.2d at 38.

[¶87]  The OTCs contend that application of the sales tax to the total consideration paid violates the external consistency requirement because it reaches the reservation services performed outside of Wyoming.  The United States Supreme Court has recognized that "an internally consistent, conventional sales tax has long been held to be externally consistent as well." *Jefferson Lines, Inc.*, 514 U.S. at 188, 115 S.Ct. at 1340.

[¶88]  The OTCs' argument is based on the faulty premise that their services are severable from the sale of lodging.  We have already found that there is only one taxable transaction entered into between an OTC and its customer.  "[T]he entire gross receipts derived from sales of services to be performed wholly in one State are taxable by that State, notwithstanding that the contract for performance of the services has been entered into across state lines with customers who reside outside the taxing State." *Id.* (citing *W. Live Stock v. Bureau of Revenue*, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938)).

[¶89]  For these reasons, we find the sales tax to be both internally and externally consistent when applied to the OTCs, as did the SBOE.

## C.  Discrimination Against Interstate Commerce

[¶90]  The OTCs contend that application of the sales tax to the total price paid by the transient guest discriminates against them because no Wyoming company has been required to pay the same tax.  The SBOE found that the OTCs failed to produce any evidence that Wyoming entities were utilizing the merchant model, which would explain why the Department has not collected on that basis.  The record supports the SBOE's conclusion.  We find no discrimination.

## D.  Fair Relation to State Services

[¶91]  The OTCs argue that the sales tax the Department seeks to impose does not bear a fair relation to the services Wyoming provides to them.  They contend that because their

facilities and employees are located outside Wyoming, they do not benefit from police or fire protection, a trained work force, or other services and assistance Wyoming provides to those who live here.

[¶92]  As noted above, the tax is assessed on the provision of lodging in Wyoming, and the taxpayer is primarily responsible for paying it.  Therefore, "[t]he fourth prong of the *Complete Auto* test thus focuses on the wide range of benefits provided to the taxpayer, not just the precise activity connected to the interstate activity at issue." *Goldberg*, 488 U.S. at 267, 109 S.Ct. at 592.

[¶93]  Wyoming provides the OTCs and their customers an orderly society in which hotels can conduct business, where access to roads and airports allows customers to utilize the hotels, and where police and fire departments protect guests and hotels.  *See Vill. of Rosemont, supra,* *14.  The lodging tax also funds Wyoming travel and tourism organizations.  These organizations use those publically-paid dollars to attract tourists to Wyoming, and those tourists in turn use the OTCs' services to find lodgings.  There is therefore a fair relationship between the tax and the services that make it possible for the OTCs to do business in this state.

[¶94]  We find that application of Wyoming's sales tax to the transactions in question satisfies all four elements of the *Complete Auto* test.  It therefore does not violate the Dormant Commerce Clause.

## III.    Equal Protection

[¶95]  The OTCs argue that application of the sales tax to the gross amount they receive from customers violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  They argue that travel agents, tour operators, and other travel intermediaries have booked hotel reservations at discounted rates and marked them up for years.  They contend that these entities are merchants of record who collect payments from travelers, remit payments for rooms, and retain compensation for facilitating the transactions.  They are not being treated the same as the OTCs, they claim, because they have not been required to collect and remit sales tax.

[¶96]  A party challenging a legislative classification which does not involve a suspect class has the heavy burden of demonstrating the unconstitutionality of the statute beyond a reasonable doubt.  *Gosar's Unlimited Inc. v. Wyoming Public Service Comm'n*, 2013 WY 90, ¶ 14, 305 P. 3d 1152, 1156 (Wyo. 2013) (quoting *Newport Int'l Univ., Inc. v. State Dep't of Ed.,* 2008 WY 72, ¶ 16, 186 P.3d 382, 387 (Wyo. 2008)); *Krenning v. Heart Mtn. Irr. Dist.*, 2009 WY 11, ¶ 33, 200 P.3d 774, 784 (Wyo. 2009).  As the SBOE found, there is no evidence in the record that any Wyoming entities are using the

merchant model. There is therefore no evidence that Wyoming businesses operating in the same manner as the OTCs are treated differently, and consequently no proof of an equal protection violation. *Gosar's Unlimited*, ¶ 15, 305 P.2d at 1156-57.

## IV. Due Process

[¶97] Despite having claimed that the tax statutes referred to above clearly do not apply to their activities, the OTCs contend that if they are construed to do so, they are so vague as to violate their rights to substantive due process under the Fourteenth Amendment to the United States Constitution (". . . nor shall any State deprive any person of life, liberty or property, without due process of law"). It is true that laws must be reasonably explicit to avoid trapping the innocent by not providing fair warning, and to prevent arbitrary and discriminatory enforcement due to the lack of explicit standards. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972).

[¶98] A statute is impermissibly vague if people of common intelligence must necessarily guess at its meaning and would differ as to its application. *Newport Int'l. Univ., Inc.*, ¶ 23, 186 P.3d at 388. To succeed on a claim of vagueness, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). "If legislative intent can be ascertained with reasonable certainty, the statute will not be declared inoperative." *Haddenham v. City of Laramie*, 648 P.2d 551, 555 (Wyo. 1982). "[L]ack of precision is not itself offensive to the requirements of due process." *Browning v. State,* 2001 WY 93, ¶ 12, 32 P.3d 1061, 1066 (Wyo. 2001).

[¶99] The degree of vagueness, importance of fair notice, and fair enforcement depend, in part, on the nature of the activity in question. "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193 (footnotes omitted). The United State Supreme Court recognized that a business enterprise has "the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Id.* The Department has procedures in place to allow taxpayers to ascertain whether specific business transactions are taxable. Wyo. Stat. Ann. § 39-11-102(a)(i)(D) (LexisNexis 2013).

[¶100] We have already found the language in the tax statutes in question to be sufficiently clear to be understood without resorting to rules of statutory construction. To the extent they confuse the OTCs, the Department can clarify them. We do not therefore find them to be unconstitutionally vague.

## V. Internet Tax Freedom Act

[¶101] Appellants also argue that application of Wyoming sales tax to the gross amount it receives from customers violates the Internet Tax Freedom Act, Pu. L. 105-277, Div. C, Title XI § 1101 (Oct. 21, 1998) (enacted as a statutory note to 47 U.S.C. § 151). A tax discriminates against electronic commerce if it "imposes an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property, goods, services, or information accomplished through other means." *Id*., § 1105(2)(A)(iii). In other words, states cannot tax those providing goods or services through the internet differently than those who sell by other means.

[¶102] The OTCs argue that Wyoming has singled out on-line merchant model travel facilitators, and that it does not apply the same tax to non-Internet based facilitators using the merchant model. They contend that this results in a higher tax on their activity.

[¶103] The Department responds that the lodging tax is imposed and collected at the same rate on any consumer transaction involving the procurement of a hotel room, regardless of whether it is booked by the internet, telephone, fax machine, travel agent, or by simply showing up at the hotel's front desk. It has made the same demand on other travel intermediaries as it did on the OTCs. The SBOE found that the OTCs failed to present any evidence of differential treatment of internet providers. Appellants have referred us to no evidence in the record which would contradict this finding. We therefore agree with the SBOE that they have not shown a violation of the Internet Tax Freedom Act.

## CONCLUSION

[¶104] We find that the Wyoming Legislature intended to tax the entire amount an OTC customer pays for the right to occupy a hotel room in Wyoming. We also conclude that the sales/lodging tax statutes are constitutional when applied as the Department has applied them, and that imposition of sales/lodging tax on the entire amount paid for the right to occupy a room does not violate the Internet Tax Freedom Act. We therefore affirm the SBOE decision upholding the Department's application of the tax.