2008 WY 72

**NEWPORT INTERNATIONAL UNIVERSITY, INC.,**
Appellant,

v.

**The STATE of Wyoming, DEPARTMENT OF EDUCATION and James M. McBride, in his official Capacity as Superintendent of Public Instruction, Appellee.**

**No. S–07–0234.**

Supreme Court of Wyoming.

June 25, 2008.

Representing Appellant: C.M. Aron and Galen Bruce Woelk of Aron and Hennig, LLP, Laramie, Wyoming. Argument by Mr. Woelk.

Representing Appellees: Bruce M. Salzburg, Wyoming Attorney General; and Robin Sessions Cooley, Deputy Attorney General. Argument by Ms. Cooley.

Before VOIGT, C.J., and GOLDEN, BURKE, and KITE, JJ., and PARK, D.J.

PARK, District Judge.

[¶ 1] Newport International University, Inc. (hereinafter "NIU") appeals from a summary judgment granted in favor of the State of Wyoming, Department of Education and Mr. McBride (hereinafter collectively "Department"). The district court ruled that the Private School Licensing Act, Wyo. Stat. Ann. §§ 21–2–401 to 407 (LexisNexis 2007) (hereinafter "Act"), and Department rules promulgated pursuant to the Act did not violate the Wyoming Constitution.

[¶ 2] We affirm the decision of the district court.

## ISSUE

[¶ 3] Does the Private School Licensing Act violate the Wyoming Constitution?

## FACTS

[¶ 4] NIU, a Wyoming corporation, is a private educational institution offering post-secondary degrees to students in seventeen international learning centers. NIU has approximately 2,300 students, and it employs roughly 157 faculty and staff members in the United States and abroad. The Department licensed NIU in 2003 in accordance with the statutes in effect at that time. Wyo. Stat. Ann. §§ 21–2–401 to 407 (LexisNexis 2003). The license authorized NIU to operate until June 2008.

[¶ 5] In 2006, the Wyoming Legislature amended the Private School Licensing Act, Wyo. Stat. Ann. §§ 21–2–401 to 407. 2006 Wyo. Sess. Laws ch. 34, § 1. The amended Act became effective July 1, 2006, and significantly changed the licensing of private schools. Prior to July 1, 2006, private post-secondary educational institutions could obtain a license from the Department after payment of a license fee, an annual fee, and the posting of a bond.

[¶ 6] After amendment of the Act, all private post-secondary educational institutions are required by the Act to become accredited within five (5) years unless an extension is granted for good cause. § 21–2–402(b). The Act also requires that all private schools in Wyoming be licensed by the Department. § 21–2–401. The Department was directed to establish minimum standards for all such schools and to provide for the investigation and evaluation of the institutions as necessary to implement the rules. § 21–2–401(d). Additionally, the Act mandates registration fees, annual fees, and a performance bond of not more than $10,000. § 21–2–402(b); § 21–2–405. Finally, the Act provides for criminal penalties for violations. § 21–2–407.

[¶ 7] The Department adopted emergency rules on June 10, 2006. These rules required all private post-secondary degree-

granting institutions to submit an application to the Department by July 1, 2006, and provide proof of an application for accreditation from an association approved by the United States Department of Education.

[¶ 8] NIU attempted to renew its license in accordance with the old 2003 statutes. The Department returned the renewal packet and advised NIU that it must comply with the current Act. The Department also extended the deadline for submitting an application until September 1, 2006.

[¶ 9] NIU responded by filing a Complaint for Declaratory Judgment and for Preliminary Injunction. The Department filed an Answer and a Motion for Judgment on the Pleadings under Rule 12(c) of the Wyoming Rules of Civil Procedure. The parties agreed to stay all pending litigation and administrative proceedings in order to attempt settlement. After the parties failed to reach an agreement, NIU filed a Motion for Leave to Amend Complaint as well as a Second Amended Complaint. The district court deferred ruling on the amendments until after the Department's Motion for Judgment on the Pleadings was decided. The district court granted the Department's Motion for Judgment on the Pleadings which disposed of NIU's pending and renewed motions to amend.

[¶ 10] The Department adopted final rules, effective February 27, 2007. The final rules, entitled *Private School Registration/Licensing for Private Degree Granting Post–Secondary Education Institutions,* generally required NIU to: (a) pay a $1,000 registration fee; (b) submit a $10,000 bond; (c) obtain accreditation from a recognized accreditation agency; and (d) provide a detailed timeline setting out specific milestones to obtain accreditation and the dates on which they were to be accomplished. Although the Department had adopted interim emergency rules, the parties agreed that the final rules were the relevant rules to be considered by the district court in making its ruling.

### STANDARD OF REVIEW

[¶ 11] Rule 12(c) of the Wyoming Rules of Civil Procedure allows for a motion for a judgment on the pleadings and states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W.R.C.P. 12(c).

[¶ 12] The standard of review for application of this rule is:

A defendant is entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings, supplemented by any facts of which the district court may take judicial notice, establish that no relief can be granted.... A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain.

*Box L Corp. v. Teton County ex rel. Bd. of County Comm'rs of Teton County,* 2004 WY 75, ¶ 2, 92 P.3d 811, 813 (Wyo.2004) (citations omitted). Our review is similar to consideration of a motion to dismiss under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* We consider the allegations of the complaint to be true, and view them in the light most favorable to the plaintiff. *Id.*

[¶ 13] This Court has had some difficulty ascertaining the precise claims advanced by NIU, a difficulty also experienced by the district court. NIU asserts in a general fashion that the Act and the final rules violate various provisions of the Wyoming Constitution, such as: equal protection; delegation of authority, including the due process clause; and impairment of contract rights.

### DISCUSSION

#### Equal Protection

[¶ 14] NIU asserts that the Act and the Department's final rules violate the Equal Protection Clause of the Wyoming Constitu-

tion. NIU claims that the Act and the final rules create two separate classes: accredited schools and nonaccredited schools. The Department denies that any such differentiation is created; and to the extent that it exists, it is valid.

[¶ 15] The Wyoming Constitution differs from the United States Constitution in that it does not contain an express "equal protection" clause; rather, it contains a variety of equality provisions, *viz.* Article 1, §§ 2, 3, and 34; and Article 3, § 27. *Greenwalt v. Ram Restaurant Corp. of Wyoming,* 2003 WY 77, ¶ 39, 71 P.3d 717, 730 (Wyo. 2003). Notwithstanding this difference, this Court uses the conventional federal equal protection analysis in the interpretation of the equality provisions of the Wyoming Constitution. *Id.*

[¶ 16] The principles of equal protection analysis are well established. *Greenwalt,* ¶ 39, 71 P.3d at 730–31. Claims of unconstitutional classification are analyzed under two levels of scrutiny. If the class is suspect or if a fundamental right is involved, a strict scrutiny standard is applied that requires a demonstration that the classification is necessary to achieve a compelling state interest. *In re Honeycutt,* 908 P.2d 976, 979 (Wyo.1995); *Allhusen v. State By and Through Wyo. Mental Health Professions Licensing Bd.,* 898 P.2d 878, 885 (Wyo. 1995); *Washakie County School Dist. No. One v. Herschler,* 606 P.2d 310, 333 (Wyo. 1980). If a suspect class or a fundamental right is not involved, a rational relationship test is used to determine if the classification has a rational relationship to a legitimate state interest. *Honeycutt,* 908 P.2d at 979 (citing *Meyer v. Kendig,* 641 P.2d 1235, 1239 (Wyo.1982)). A party attacking the rationality of the legislative classification has the heavy burden of demonstrating the unconstitutionality of a statute beyond a reasonable doubt. *Greenwalt,* ¶ 30, 71 P.3d at 730 (citing *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993); *Small v. State,* 689 P.2d 420, 426 (Wyo.1984); *Nehring v. Russell,* 582 P.2d 67, 74 (Wyo.1978)).

[¶ 17] NIU concedes that it is not a member of a suspect class and that fundamental rights are not involved. Consequently, the classification must be analyzed under the rational relationship or rational basis test. In order to establish a violation of equal protection, NIU must show that similarly situated entities are treated differently and that the disparate treatment is not rationally related to a legitimate governmental objective. *Bachmeier v. Hoffman,* 1 P.3d 1236, 1243 (Wyo.2000).

[¶ 18] We invoke a four part test in analyzing the constitutionality of a classification under the rational relationship test. In applying the test, we must determine: (1) what class is harmed by the legislation and has that group been subjected to a tradition of disfavor by our laws; (2) what is the public purpose to be served by the law; (3) what is the characteristic of the disadvantaged class that justifies disparate treatment; and (4) how are the characteristics used to distinguish people for disparate treatment relevant to the purpose the challenged law purportedly intends to serve. *Lincoln County School Dist. No. One v. State,* 985 P.2d 964, 967 (Wyo.1999).

[¶ 19] NIU seeks to have this Court find that there are two classes; those institutions that are accredited, and those that are not. We agree with the district court that no classification has been created by the Act and it is unnecessary to do any further analysis under the aforementioned test. The Act regulates one specific well-defined class, to wit: private degree-granting post-secondary educational institutions. These institutions include all trade, correspondence, distance education, technical, vocational, business or other private schools. § 21-2-401(a). All organizations in this category must be accredited. Those institutions that are already accredited obviously do not have to apply to become accredited; those institutions that are not accredited must become accredited within the timeframe provided. Therefore, we find that no equal protection violation has occurred because different classifications are not created under the Act or the rules adopted by the Department.

### Improper Delegation

[¶ 20]  NIU argues that the statutory requirement of accreditation is a delegation of power that violates the Wyoming Constitution, specifically Article 1, § 6 (no person shall be deprived of life, liberty, or property without due process of law); and Article 3, § 1 (the legislative power shall be vested in a senate and house of representatives, which shall be designated "the legislature of the State of Wyoming").  NIU asserts that there are no standards that govern the accreditation process, or if there are standards, they are "arbitrarily developed and enforced" by the accrediting agency.  In addition, NIU contends it has been forced to apply to and accept the decision of a private accrediting agency with no "jurisdictional power of oversight."  The Department responds that there is no "delegation of authority;" and even if this Court were to find that there were such delegation, there are appropriate "standards" in place to assure adequate protection.

[¶ 21]  The legal principles involving delegation of authority from the legislature to a private entity have not been the subject of much discussion by this Court; therefore, more exegesis is required than was necessary for resolution of the other constitutional claims raised by NIU.

[¶ 22]  "The delegation of legislative power is an old concern, older than the Constitution or even than the separation-of-powers principle."  Peter H. Aranson et al., *A Theory of Legislative Delegation,* 68 Cornell L.Rev. 1, 4 (1982).  In 1690, John Locke articulated the rationale for restrictions on delegation of legislative power, arguing that the people had appointed the "power of making laws" solely to the legislature and therefore the legislature cannot "transfer their authority of making laws and place it in other hands."  John Locke, Second Treatise of Government ch. XI, § 141 (1960) (as edited by C.B. McPherson, Hackett Publishing Co., Inc.1980).  Restraint on delegation of lawmaking power is "rooted in the principle of separation of powers that underlies our tripartite system of Government."  *Mistretta v. United States,* 488 U.S. 361, 371, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989).  "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."  *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 529, 55 S.Ct. 837, 843, 79 L.Ed. 1570 (1935).  Likewise, Article 3, § 1 of the Wyoming Constitution vests legislative power in the State's legislature.  *Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne,* 371 P.2d 409, 418 (Wyo. 1962).

[¶ 23]  Constitutional claims of "void for vagueness" and "unlawful delegation of legislative authority" are closely related.  *Care and Protection of Charles,* 399 Mass. 324, 504 N.E.2d 592, 596–97 (1987).  Each presents the question of whether the statute is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.  Id. The nondelegation doctrine is a judicial construction which limits the exercise of power by actors not elected to or otherwise employed within a designated branch of government.  Julie H. Vallarelli, *State Constitutional Restraints on the Privatization of Education,* 72 B.U. L.Rev. 381, 390–93 (1992).

[¶ 24]  State constitutional vesting clauses, which entrust certain branches of government with specified functions and powers, are the primary source of limitations on delegations.  David M. Lawrence, *Private Exercise of Governmental Power,* 61 Ind. L.J. 647, 658–69 (1986).  Lawrence suggests that the "vesting" clause is not a very satisfactory basis for judging private delegation by a legislature.  *Id.* Lawrence points out that this clause limits the legislatures delegation of its own power, but it does not satisfactorily deal with delegations by state agencies or local governments.  *Id.* According to Lawrence, the vesting clause helps insure the traditional and important separation of democratic powers by disbursing political power to the several branches.  The separation of power doctrine, critical to our democratic system, implicates improper delegation from one branch of government to another; and does not apply to delegations of power by one branch to a public agency or private entity.  Lawrence notes that all three branches, to some extent, have lawfully delegated authority to both private and public

entities. Lawrence suggests that, instead, the proper focus should be whether the delegation violates concepts of due process, and whether it is reasonable. The Court finds this analysis to be compelling and therefore adopts this approach.

[¶ 25] Section 21–2–402(b) of the Wyoming Statutes requires accreditation by an accrediting association recognized by the United States Department of Education. The question is whether requiring NIU to be accredited by an outside, non-governmental entity is an improper delegation of power that offends due process as guaranteed by the Wyoming Constitution.

[¶ 26] This Court finds that the requirement of accreditation is a delegation of power made by the Department to the accrediting institution; however, this delegation does not violate the Wyoming Constitution. Like many other states, the Wyoming Constitution does not directly prohibit delegations of public power to private entities or to public agencies. Any constitutional limitation is therefore indirect. Lawrence, *supra*, at 658–69.

[¶ 27] Wyoming statutes contain many examples of delegation of accreditation to private entities. Wyo. Stat. Ann. § 21–18–205(a)(i) (LexisNexis 2007) (community colleges must "[b]e accredited academically by the regional accrediting agency" to qualify for state funding); Wyo. Stat. Ann. § 7–22–105(a) (LexisNexis 2007) (private correctional facilities must "meet the percentage of standards required for accreditation by the American correctional association, except where the contract requires compliance with a higher percentage of nonmandatory standards"); Wyo. Stat. Ann. § 35–2–907(a) (LexisNexis 2007) ("[a] licensed health care facility which has been accredited by a nationally recognized accrediting body approved by federal regulations shall be granted a license renewal without further inspection"). In addition, Wyoming requires many professionals to obtain degrees from nationally accredited schools as a condition of licensure; these include, *inter alia*, architects, podiatrists, dentists, veterinarians, occupational therapists, and respiratory therapists.

[¶ 28] These examples of delegation do not suggest that all delegation of authority to private entities is constitutional. The delegation must meet certain constitutional standards. Fundamental policy decisions should be made by members of the legislature, elected for that purpose; these standards insure that policy is set by the legislature, and not delegated to agencies.

[¶ 29] Courts have long recognized that statutes requiring accreditation by a private agency contain a constitutionally sufficient standard; specifically, "the standard of scholarship required of [the private educational institution] shall be equal to the standard required by the [accrediting entity]." *Ex Parte Gerino*, 143 Cal. 412, 77 P. 166, 168 (1904). The Court in *Gerino* recognized that a legislature cannot set standards to meet "new and changing conditions." *Id.* at 168–69. Delegation to private entities, properly done, provides the flexibility necessary to accommodate societal change.

[¶ 30] As noted in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454, 466 (Tex.1997): "Even in a simple society, a legislative body would be hard put to contend with every detail involved in carrying out its laws; in a complex society it is absolutely impossible to do so. Hence, legislative delegation of power to enforce and apply law is both necessary and proper." Delegation of power by the legislature necessarily involves some discretion. Chief Justice Taft noted in *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928), that the limits of delegation "must be fixed according to common sense and the inherent necessities of the governmental co-ordination." Justice Scalia has observed that no statute can be "entirely precise" and that some judgment must be accorded to the officer carrying out the law, and to the judge applying it. Therefore, the debate over unconstitutional delegation is not a debate over principle, but of a "question of degree." *Mistretta*, 488 U.S. at 415–16, 109 S.Ct. at 677 (Scalia, J., dissenting). Justice Scalia also observed that "it is small wonder that we have almost never felt qualified to second-

guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Id.* at 416, 109 S.Ct. at 678.

[¶ 31]   The crucial test in determining whether there is an unlawful delegation is whether the statute contains sufficient standards to enable the agency to act and the courts to determine whether the agency is carrying out the legislature's intent. *Gallaher v. Elam,* 104 S.W.3d 455, 464 (Tenn.2003); *Healthscript, Inc. v. State,* 770 N.E.2d 810, 814 (Ind.2002); *In re Advisory Opinion to the Governor,* 509 So.2d 292, 311 (Fla.1987).

[¶ 32]   Section 21–2–402(b) requires NIU and similarly situated institutions to be accredited by "an accrediting association recognized by the United States department of education." These accrediting associations are governed by 34 C.F.R. § 602.1–602.50 (2008). These regulations contain detailed requirements, including geographic scope of accrediting activities (§ 602.11); accrediting experience (§ 602.12); a requirement that the accrediting agency demonstrate that its standards are widely accepted in the United States (§ 602.13); the accrediting entity must "demonstrate" that it has rigorous standards to ensure quality education (§ 602.16); it must also show that it has mechanisms to evaluate compliance with the standards prior to accreditation (§ 602.17); it must ensure consistent application of its standards (§ 602.18) and must monitor (§ 602.19) and enforce its standards (§ 602.20). In short, there are specific and detailed standards to govern the accreditation process.

[¶ 33]   In addition to these standards, the Department's regulations allow for judicial review of a contested case involving a license. Where certification by a private association is a prerequisite to the practice of a given profession, courts have scrutinized the standards and procedures employed by the association notwithstanding their recognition of the fact that professional societies possess a specialized competence in evaluating the qualifications required to engage in professional activities. *Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Schools, Inc.,* 432 F.2d 650, 655 (D.C.Cir.1970). The standards must be reasonable, evenly applied, and not in conflict with the public policy of the jurisdiction. *Id.*

[¶ 34]   This Court follows the lead of the Colorado Supreme Court and takes

> judicial notice that recognized accrediting associations, such as are delineated in the statute in question, have become an integral part of the secondary education systems in America. They are voluntary, nongovernmental agencies which are accountable only to their own membership. Their purpose is to evaluate educational institutions according to standards and criteria which have evolved over many years of experience commencing in the 1800's. They accredit—that is, admit to membership—those colleges and universities they deem qualified. Their accrediting standards and criteria are not governmentally imposed.

*Colorado Polytechnic College v. State Bd. for Community Colleges and Occupational Ed.,* 173 Colo. 39, 476 P.2d 38, 42 (1970).

[¶ 35]   We hold there is no improper delegation in this case because applicants have sufficient guarantees of due process, and the delegation is reasonable. It is reasonable to require NIU to be accredited by a private entity. NIU has a number of overseas facilities, and it is unreasonable to assert that the Department should inspect and certify all of these foreign facilities. The Department lacks the financial resources, personnel, and expertise to accredit private schools that are similar to NIU. The regulations require that the accreditation be carried out by disinterested parties. There are appropriate standards in place to allow the agency to act; and NIU, as well as others covered by the Act, are accorded all due process, judicial review is available to guarantee that the Act and the regulations are followed.

### Impairment of Contracts/Special Laws

[¶ 36]   NIU also argues that the Act violates the following provisions of the Wyoming Constitution: Article 1, § 34 (all laws of a general nature shall have a uniform operation); Article 1, § 35 (no ex post facto law, nor any law impairing the obligation of contracts, shall ever be made); and Article 3,

§ 27 ("special laws"). NIU argues that it is forced to enter into a contract with an accrediting association; it also asserts the Act does not advance the quality of education and it seems to be saying there is no evidence of any reasonable relationship between the Act and any public interest. The Department responds that private contracts cannot be used to prevent the Wyoming Legislature from enacting legitimate and appropriate legislation under its police power.

[¶ 37] NIU does not say precisely how the "special laws" clause applies. Presumably, it would be: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: ... granting to any corporation, association or individual ... any special or exclusive privilege, immunity or franchise whatever, or amending existing charter for such purpose; ... In all other cases where a general law can be made applicable no special law shall be enacted." Wyo. Const. art. 3, § 27. NIU also fails to provide a specific analysis of its concerns with the other provisions.

[¶ 38] It is well-established that the contract clause of the Constitution does not restrict the power of the state to legislate in the interest of the morals, health, and safety of the public. *State Farm Mut. Auto. Ins. Co. v. Wyoming Ins. Dep't*, 793 P.2d 1008, 1014 (Wyo.1990). The rights and obligations that are set forth in contracts are subject to regulation for the protection of the public health, safety, and morals. *Id.* The principle is "frequently stated that all contracts are made subject to the paramount authority of the state to safeguard the vital interests of its people, and all contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power." *Id.* Therefore, legislation adopted pursuant to a state's police power which may impact a contract is valid and not violative of the constitution. *Id.* Otherwise, the protections granted by the general police powers could easily be avoided by a contract entered into to allow that which would otherwise be prohibited. *Id.* The authority of the legislature under its police

powers cannot be restricted by the provisions of private contracts between individuals, or between individuals and corporations. *Id.*

[¶ 39] A state has the authority to enact such laws as reasonably are deemed to be necessary to promote the health, safety, and general welfare of its people. *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 985 (1918). The State of Wyoming has the authority to impose reasonable regulations in state educational institutions; as noted by the district court, the protracted school finance litigation is clear proof of that principle. The requirement of accreditation of private degree-granting educational institutions is a reasonable restriction, adopted to ensure that quality education is being provided by a private entity licensed in Wyoming. To the extent the accreditation process requires a contract between NIU and the accrediting entity, the need of the state to protect citizens outweighs the contract rights of NIU. We hold that neither the Act nor the rules adopted pursuant to the Act violate the contract clause of the Wyoming Constitution.

[¶ 40] In conclusion, this Court finds that neither the Act nor the final rules violate the Wyoming Constitution. There is no equal protection violation because different classifications are not created under the Act or the rules. The requirement that private degree granting institutions be accredited contains specific standards and allows for judicial review insuring due process protections for the institutions. The delegation of the accrediting authority is reasonable and often used by state governments. Finally, the State of Wyoming has the authority, under its police powers, to regulate private educational institutions, even though this may have some impact on the institution's contracts.

[¶ 41] The decision of the district court is affirmed.