FOX, Justice.
[¶1] This is a consolidated appeal in which the International Association of Fire Fighters Local Union No. 5058 (IAFF Local 5058) and the International Association of Fire Fighters Local Union No. 5067 (IAFF Local 5067) appeal from separate district court decisions governing their attempts to collectively bargain with their respective corporate entities. The district courts in both cases held that the Wyoming Collective Bargaining for Fire Fighters Act's definition of "fire fighters" includes volunteers because they are "paid members of ... regularly constituted fire department[s]." Consequently, the district courts concluded that IAFF Local 5058 and IAFF Local 5067, which were formed by and consist of only full-time, career fire fighters, were not properly constituted bargaining units under the Act. We affirm.
ISSUE
[¶2] The issue is whether volunteer and part-time (pool) fire fighters in the Jackson Hole Fire/EMS Department and volunteer *1061 fire fighters in the Campbell County Fire Department are "fire fighters" as defined by Wyo. Stat. Ann. § 27-10-101(a), and thus are entitled to be represented in collective bargaining negotiations.
FACTS
[¶3] These consolidated appeals concern Wyoming's Collective Bargaining for Fire Fighters Act, Wyo. Stat. Ann. §§ 27-10-101 through 27-10-109 (LexisNexis 2017) (the Act) and require the interpretation of "fire fighters" as that term is defined in Wyo. Stat. Ann. § 27-10-101(a)(i). We first outline the collective bargaining process, and then review the relevant facts in each consolidated case.
A. Collective Bargaining for Fire Fighters in Wyoming
[¶4] Wyo. Stat. Ann. §§ 27-10-101 through 27-10-109 establish the process by which fire fighters may form unions to collectively bargain in Wyoming. The term "fire fighters" is defined, "unless the context requires a different interpretation," as "paid members of any regularly constituted fire department in any city, town or county within the state." Wyo. Stat. Ann. § 27-10-101(a)(i). Fire fighters "have the right to bargain collectively with their respective cities, towns or counties" and have the right "to be represented by a bargaining agent in ... collective bargaining as to wages, rates of pay, working conditions and all other terms and conditions of employment." Wyo. Stat. Ann. § 27-10-102.
[¶5] To exercise their right to collectively bargain, fire fighters must follow the process outlined in the statutes: The fire fighters elect an organization that acts as their exclusive bargaining agent. Wyo. Stat. Ann. § 27-10-103. The fire fighters' bargaining agent requests a meeting with the corporate authority in writing. Wyo. Stat. Ann. §§ 27-10-104, 109. The corporate authority then has ten days to meet with the bargaining agent. Wyo. Stat. Ann. § 27-10-104. The parties have 30 days to reach an agreement; after that time, all unresolved issues are submitted to mandatory arbitration. Wyo. Stat. Ann. § 27-10-105.
B. Gillette, Wright, and Campbell County Fire Fighters
[¶6] The City of Gillette, the Town of Wright, and Campbell County formed a Fire Protection Joint Powers Board (the Campbell County Joint Powers Board), which oversees the Campbell County Fire Department (CCFD). CCFD covers 5,000 square miles and responds to "approximately 2,000 calls for assistance each year." CCFD employs two categories of fire fighters: full-time, career fire fighters and volunteer fire fighters. Currently there are 23 career fire fighters and 200 volunteer fire fighters in the CCFD.[1]
[¶7] Full-time, career fire fighters earn between $35,006.40 and $62,732.80 per year and are scheduled to work up to 240 hours every 28 days. In 2016, CCFD career fire fighters' total payroll was $1,370,916.61. In addition to their salaries, full-time, career fire fighters receive health insurance, dental insurance, flexible benefits plan participation eligibility, basic term-life insurance, supplemental life insurance, long-term disability insurance, accidental death and dismemberment insurance, participation in the Wyoming Retirement System (Paid Firefighter Plan B), vision insurance, deferred compensation, and holiday and sick leave.
[¶8] Unlike full-time, career fire fighters, CCFD volunteer fire fighters do not have a set schedule and receive no consequences for refusing a shift. They are not eligible for sick or vacation leave. Like their full-time counterparts, however, volunteers are compensated for their efforts. They earn compensation *1062 for responding to incidents and attending trainings and meetings. In 2015, CCFD paid volunteers a total of $213,051.41 for 23,383.56 hours of work, an average of $9.11 per hour. Volunteer fire fighters also receive periodic physical exams (depending on age, every one, two, or three years), Wyoming workers' compensation coverage, supplemental wage coverage, use of CCFD maintenance shop and exercise facilities, CCFD contribution to and participation in the Volunteer Fire Fighter and EMT Pension Account, and unemployment insurance.
[¶9] In July 2015, a majority of the CCFD career fire fighters voted to select IAFF Local 5058 as their sole and exclusive bargaining agent pursuant to Wyo. Stat. Ann. § 27-10-103. Full-time, career fire fighters with the rank of Captain or below were eligible to vote for the establishment of IAFF Local 5058. Volunteer fire fighters were not allowed or invited to vote in the election. The IAFF approved the constitution and by-laws of IAFF Local 5058 on September 10, 2015.
[¶10] On July 22, 2015, Bryan Borgialli, president of IAFF Local 5058, advised the Campbell County Joint Powers Board that "the firefighters of the Campbell County Fire Department have organized as a local union" and that the IAFF had authorized IAFF Local 5058 to act as their representative. After receiving this notice, the Campbell County Joint Powers Board asked the Campbell County Attorney to request an Attorney General's opinion regarding whether the Campbell County Joint Powers Board is a "corporate authority" able to participate in negotiations with IAFF Local 5058, and whether volunteer fire fighters are "paid members of any regularly constituted fire department," who should have been allowed to vote to select a bargaining agent, pursuant to the Wyoming statutes governing collective bargaining for fire fighters. By letter dated September 11, 2015, a copy of which was provided to IAFF Local 5058 President Borgialli, the Campbell County Attorney requested the opinion, and on November 16, 2015, the Wyoming Attorney General's office responded. The Attorney General concluded that the Campbell County Joint Powers Board is the appropriate corporate authority to negotiate with IAFF Local 5058 and that volunteer fire fighters are "paid members" of the CCFD.
[¶11] On February 18, 2016, pursuant to Wyo. Stat. Ann. § 27-10-104, IAFF Local 5058 submitted written notice to the Campbell County Joint Powers Board, requesting a meeting to collectively bargain. The Campbell County Joint Powers Board responded on February 25, 2016, and, relying upon the Attorney General's opinion, it concluded that it would "not recognize Local Union No. 5058 as the collective bargaining unit for the Campbell County Fire Department because the volunteer firefighters were not included in the election process." IAFF Local 5058 subsequently filed a Complaint for Declaratory Judgment, asking the court to find that IAFF Local 5058 is the bargaining agent for the CCFD fire fighters and that the Campbell County Joint Powers Board is obligated to meet and confer with IAFF Local 5058 for collective bargaining, pursuant to the Act. The parties filed cross-motions for summary judgment, and the district court held that the volunteers are "paid members," and therefore should have been allowed to participate in the election of the collective bargaining agent. Accordingly, the court ruled IAFF Local 5058 cannot be the collective bargaining agent for the department, granted summary judgment in favor of the Campbell County Joint Powers Board, and dismissed IAFF Local 5058's petition for declaratory relief. This appeal followed and was consolidated with a similar appeal arising from Teton County.
C. Jackson and Teton County Fire Fighters
[¶12] The Town of Jackson and Teton County entered into a joint power agreement, pursuant to Wyo. Stat. Ann. § 16-1-105, to form a joint fire and emergency medical services department known as the Jackson Hole Fire/EMS Department (JHFD). JHFD employs 18 full-time, career fire fighters; 7 part-time "pool" fire fighters; and 79 volunteer fire fighters.
[¶13] JHFD full-time, career fire fighters receive monetary compensation at hourly *1063 rates, including double time special event pay if outside of regular shift, and other benefits, including vacation and sick leave, paid holidays, health, dental, and vision insurance, eligibility to participate in a flexible benefits plan, life insurance, blanket accident insurance, accidental death and dismemberment insurance, supplemental life and death and dismemberment insurance, employer contribution to Wyoming Retirement System (Firefighter Plan B), deferred compensation, workers' compensation, unemployment insurance, annual vaccines and immunizations, and annual physical examinations.
[¶14] JHFD volunteer and pool fire fighters also receive compensation for their work. Volunteers are paid pay per call for responding to incidents and approved training, and receive hourly pay for ambulance transfers and special events. Pool fire fighters receive hourly pay, including a $1 per hour bonus for each hour worked in each shift completed, and special event pay (double time if the event is outside their normal shift). Volunteer and pool fire fighters in JHFD receive other compensation that includes Wyoming workers' compensation coverage, accidental death and dismemberment insurance,[2] blanket accident insurance, and annual vaccines and immunizations. In addition, volunteers receive supplemental insurance benefits, JHFD contribution to the Volunteer Fire Fighter and EMT Pension Account, unemployment insurance, and annual physical exams.
[¶15] On July 13, 2015, the full-time, career fire fighters employed by the JHFD formed the IAFF Local 5067, Jackson Hole Professional Firefighters union. Only "paid full-time firefighters" are eligible for membership in IAFF Local 5067. Neither the volunteer nor the pool fire fighters were included in the union voting.
[¶16] On October 26, 2015, John Tobey, the president of IAFF Local 5067, notified Teton County of the formation of the union and its status as the "sole representative of the full time firefighters of" the JHFD, and on February 22, 2016, pursuant to Wyo. Stat. Ann. § 27-10-104, IAFF Local 5067 submitted its written request for a meeting to collectively bargain with the Town of Jackson and Teton County. The parties met on February 29, 2016, and during that meeting, IAFF Local 5067 presented a draft collective bargaining agreement. The parties met two more times in March 2016, additional drafts of the collective bargaining agreement were exchanged, and a fourth meeting was scheduled for March 22, 2016.
[¶17] However, on March 20, 2016, an article discussing the Attorney General's opinion and the issues surrounding the recognition of IAFF Local 5058 in Campbell County appeared in the Gillette News Record. After receiving notification of that article, Teton County and the Town of Jackson obtained a copy of the Attorney General's opinion issued in response to the Campbell County Joint Powers Board inquiry. On March 21, 2016, relying upon the Attorney General's opinion, Teton County and the Town of Jackson informed IAFF Local 5067 that they would not recognize the union as the exclusive bargaining agent for the fire fighters and that negotiations would cease. They explained:
Based on the Wyoming Attorney General's opinion it does not appear that the International Association of Firefighters Local 5067 is the proper entity that is empowered to negotiate on behalf of the firefighters of the Jackson Hole Fire/EMS Department. Wyoming Statute § 27-10-103 states that the organization that shall be the sole and exclusive bargaining agent for all of the members of the department must be selected by a majority of the firefighters. This does not appear to have occurred since only a very small fraction of the total number of firefighters actually were permitted to vote.
[¶18] IAFF Local 5067 filed a Complaint for Declaratory Judgment, asking the court to declare that Teton County and the Town of Jackson were obligated to meet and confer with IAFF Local 5067 for collective bargaining, pursuant to the Act. The parties filed cross-motions for summary judgment, and the district court held that the volunteers *1064 and pool fire fighters fall under the statutory definition of "fire fighter," and therefore should have been allowed to participate in the election of the collective bargaining agent. Accordingly, the court ruled IAFF Local 5067 is not the collective bargaining agent for the department and granted summary judgment in favor of the Town of Jackson and Teton County. This appeal followed and has been consolidated with IAFF Local 5058's appeal.
STANDARD OF REVIEW
[¶19] We affirm summary judgment decision when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). "Because summary judgment involves a purely legal determination, we undertake de novo review of a trial court's summary judgment decision." EGW v. First Fed. Sav. Bank of Sheridan , 2018 WY 25, ¶ 11, 413 P.3d 106, 109 (Wyo. 2018) (citations omitted). "We accord no deference to the district court on issues of law and may affirm the summary judgment on any legal grounds appearing in the record." Montierth v. Deutsche Bank Nat'l Tr. Co. , 2018 WY 41, ¶ 6, 415 P.3d 654, 658 (Wyo. 2018) (quoting Anadarko Land Corp. v. Family Tree Corp. , 2017 WY 24, ¶ 15, 389 P.3d 1218, 1223 (Wyo. 2017) ). Further, statutory interpretation is a question of law, which we review de novo. Adekale v. State , 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015).
DISCUSSION
[¶20] Resolution of the issue presented in this case requires us to interpret Wyoming's Collective Bargaining for Fire Fighters statutes. Wyo. Stat. Ann. §§ 27-10-101 through 27-10-109. "When we interpret statutes, our goal is to give effect to the intent of the legislature." Fugle v. Sublette Cty. Sch. Dist. No. 9 , 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo. 2015) (citations omitted). "[W]e 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.' " Id . at ¶ 8, 353 P.3d at 734 (quoting Krenning v. Heart Mountain Irrigation Dist. , 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009) ). We "construe each statutory provision in pari materia , giving effect to every word, clause, and sentence according to their arrangement and connection." PacifiCorp, Inc. v. Dep't of Revenue , 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017) (quoting Nicodemus v. Lampert , 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) ). And, when "the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction." Id . at ¶ 10, 401 P.3d at 909 (citation omitted).
[¶21] "[W]e proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature" only if we determine the language in the statute to be ambiguous. In re Estate of Meyer , 2016 WY 6, ¶ 21, 367 P.3d 629, 636 (Wyo. 2016) (quoting Powder River Basin Res. Council v. Wyo. Oil &Gas Conservation Comm'n , 2014 WY 37, ¶ 19, 320 P.3d 222, 229 (Wyo. 2014) ).
[¶22] The "Definitions" section of the Act includes the following definition of fire fighter:
(a) As used in this act [ §§ 27-10-101 through 27-10-109 ] the following terms shall, unless the context requires a different interpretation , have the following meanings:
(i) The term "fire fighters" shall mean the paid members of any regularly constituted fire department in any city, town or county within the state[.]
Wyo. Stat. Ann. § 27-10-101(a)(i) (emphasis added).
[¶23] IAFF Local 5058 and IAFF Local 5067 (the Unions) assert essentially the same arguments. They contend that the statutory definition of "fire fighter" is ambiguous on its face because it contains language allowing for differing interpretations of its terms when "context requires a different interpretation." The Unions argue that in this context only full-time, career fire fighters are "fire fighters" entitled by the statutes to collectively bargain. The Campbell County Joint Powers *1065 Board, Teton County, and the Town of Jackson argue that the statute is unambiguous and that volunteer and pool fire fighters (in the case of JHFD) are "paid members" of their respective fire departments.
[¶24] We begin by examining the plain language of the statute. The "Definitions" section of the statute defines "fire fighters" as "paid members of any regularly constituted fire department." Wyo. Stat. Ann. § 27-10-101(a)(i). The parties do not dispute that the CCFD and JHFD are "regularly constituted fire department[s]," nor do they dispute that the volunteer and pool fire fighters are paid.
[¶25] In Campbell County, the volunteer fire fighters are paid on an hourly basis for responding to calls and attending meetings. In addition, they receive many other benefits to compensate them for their work. See supra ¶8. Similarly, Teton County pays volunteers on an hourly basis when they are on call and provides numerous other benefits as well. See supra ¶14. Teton County pays pool fire fighters hourly wages, overtime, and other benefits. See supra ¶14. Thus, CCFD and JHFD volunteer and JHFD pool fire fighters are "paid members" of their respective fire departments.
[¶26] We now turn to the language of the statute that the Unions contend creates ambiguity. The "Definitions" section directs that those definitions of "fire fighter" and "corporate authorities" be applied "unless the context requires a different interpretation." Wyo. Stat. Ann. § 27-10-101(a).[3] The Unions argue that in this context, "fire fighters" can only include full-time, career fire fighters.
[¶27] We agree that the "context" language is odd because examining context is normally something the courts do once an ambiguity is found, not something they do when language of a statute is clear. See , e.g. , In re Estate of Meyer , 2016 WY 6, ¶ 21, 367 P.3d at 636. The "unless the context requires a different interpretation" language is not ambiguous; yet, it functions as a sort of built-in ambiguity in that its plain meaning indicates that the legislature intended the courts to examine the context to determine whether it requires a different definition than the one provided. The legislature provides no guidance regarding how the courts should examine context or even what context is relevant to an application of the definitions.
[¶28] We are mindful of the differing functions of the legislature and the judiciary. See , e.g. , Wyo. Const. art. 2, § 1 ; Wyo. Const. art. 3, § 1 ; Allred v. Bebout , 2018 WY 8, ¶ 30, 409 P.3d 260, 268 (Wyo. 2018) ; Newport Int'l Univ., Inc. v. State, Dep't of Educ. , 2008 WY 72, ¶ 22, 186 P.3d 382, 388 (Wyo. 2008). "The function of courts is confined to questions of law and not questions of policy." 1 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 2:5 (7th ed., Nov. 2017 update). Courts "may not substitute their independent judgment concerning what the law should be for that of the responsible legislative body." Id . Further, "the doctrine of separation of powers does not permit a *1066 legislature to abdicate its function to the judiciary by passing statutes which operate at the discretion of the courts, or under which courts are allowed to determine conditions in which the statute will be enforced." 1 Singer, supra , § 4:6.
"The delegation of legislative power is an old concern, older than the Constitution or even than the separation-of-powers principle." Peter H. Aranson et al., A Theory of Legislative Delegation , 68 Cornell L.Rev. 1, 4 (1982). In 1690, John Locke articulated the rationale for restrictions on delegation of legislative power, arguing that the people had appointed the "power of making laws" solely to the legislature and therefore the legislature cannot "transfer their authority of making laws and place it in other hands." John Locke, Second Treatise of Government ch. XI, § 141 (1960) (as edited by C.B. McPherson, Hackett Publishing Co., Inc. 1980). Restraint on delegation of lawmaking power is "rooted in the principle of separation of powers that underlies our tripartite system of Government." Mistretta v. United States , 488 U.S. 361, 371, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." A.L.A. Schechter Poultry Corp. v. United States , 295 U.S. 495, 529, 55 S.Ct. 837, 843, 79 L.Ed. 1570 (1935). Likewise, Article 3, § 1 of the Wyoming Constitution vests legislative power in the State's legislature. Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne , 371 P.2d 409, 418 (Wyo.1962).
Newport Int'l Univ. , 2008 WY 72, ¶ 22, 186 P.3d at 388.
[¶29] No party has contended that the legislature violated the separation of powers doctrine by delegating policymaking authority to the courts when it defined "fire fighters" as "paid members of any regularly constituted fire department" "unless the context requires a different interpretation" in Wyo. Stat. Ann. § 27-10-101(a)(i), and we assume it did not intend to do so. See Kordus v. Montes , 2014 WY 146, ¶ 6, 337 P.3d 1138, 1139 (Wyo. 2014) (we presume statutes to be constitutional and resolve any doubt in favor of constitutionality); Krenning , 2009 WY 11, ¶ 33, 200 P.3d at 784 (we presume statutes to be constitutional). At the same time, we must pay due regard to the constraints of the separation of powers doctrine. We therefore construe the "context" language narrowly, and not as an improper invitation to this Court to establish policy regarding who may and may not unionize based upon language that is absent from the statute.
[¶30] In addition,
[c]ourts strictly construe exceptions to statutes, and those who claim the benefit of an exception have the burden of proving that they come within the limited class for whose benefit the exception was established. As a general rule, when statutory exceptions are plainly expressed, courts do not add exceptions or exclusions beyond those explicitly provided by the legislature.
3B Singer, supra , § 75:6. We therefore find no basis to depart from the plain meaning of the statutory definition of "fire fighters."
[¶31] Even if we were to consider the context beyond that of the statutory framework and the legislature's stated policy, the "context" of the pending cases does not "require" a conclusion that only full-time, career fire fighters can collectively bargain. The Unions claim that an interpretation of the statute that includes volunteers as fire fighters who can collectively bargain in the same unit as full-time, career fire fighters would disregard the discrepancy in interests between the full-time and volunteer members of their departments. However, the record belies this contention and illustrates that the full-time and volunteer fire fighters have numerous common interests. Mr. Borgialli, president of IAFF Local 5058, set forth the reason for unionizing in Campbell County in an email to the president of Federated Fire Fighters of Wyoming:
The points we would like to stay away from is pay, insurance and benefits. Our reason for joining the union at this point is Staffing, Safety, Job Security/Protection, Due Process, and Communication. We do not wish to drive a wedge between career and volunteer staff. We look forward to building a relationship with them and continue *1067 to move the fire department in a positive, forward direction.
Staffing, safety, and communication are all topics that apply to both full-time, career fire fighters and volunteer fire fighters. Similarly, according to Mr. Tobey, president of IAFF Local 5067, the intent of the proposed collective bargaining agreement in Teton County was to "ensure public safety, firefighter safety, and utilize best practices for the operation of the department." He also asserted that "equitable working conditions" was another concern of IAFF Local 5067. Again, these topics are of concern to all fire fighters, not just full-time, career fire fighters. Thus, we cannot conclude that the interests of the full-time and volunteer fire fighters provide a "context" that "requires a different interpretation."
[¶32] The Unions also contend that in our examination of "context," we should look to other states' laws regarding collective bargaining for fire fighters. They argue that because other states such as Utah, Oklahoma, Rhode Island, and Colorado specify that only full-time or permanent members of any fire department are considered "fire fighters" for collective bargaining purposes,[4] we should likewise conclude that our legislature meant to exclude volunteers from collective bargaining. Those other states' statutes, however, expressly define "fire fighters" as either "permanent" or "full time" employees of their fire departments.
[¶33] In contrast, our statute contains no such language. We will not add that language in the guise of statutory interpretation. "This Court is not at liberty to add words to a statute that the legislature chose to omit." Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue , 2017 WY 6, ¶ 31, 387 P.3d 725, 733 (Wyo. 2017) ; see also MF v. State , 2013 WY 104, ¶ 11, 308 P.3d 854, 858 (Wyo. 2013) ("[W]e will not supply missing terms or expand a statute's meaning beyond its plain language."). "The omission of words from a statute must be considered intentional on the part of the legislature. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission." In re Adoption of Voss , 550 P.2d 481, 485 (Wyo. 1976) (internal citations omitted).
[¶34] Finally, we do not disregard our other principles of statutory construction. One of those principles is that we read statutes "in pari materia , giving effect to every word, clause, and sentence according to their arrangement and connection." PacifiCorp , 2017 WY 106, ¶ 10, 401 P.3d at 908 (citations omitted). We "consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously." Id . (quoting Nicodemus , 2014 WY 135, ¶ 13, 336 P.3d at 674 ). And, we "will not interpret a statute in a way that renders any portion meaningless or in a manner producing absurd results." City of Casper v. Holloway , 2015 WY 93, ¶ 20, 354 P.3d 65, 71 (Wyo. 2015) (citation omitted).
[¶35] The Unions argue that language in Wyo. Stat. Ann. § 27-10-102, stating that fire fighters "shall have the right to bargain collectively ... and to be represented by a bargaining agent in such collective bargaining as to wages, rates of pay, working conditions and all other terms and conditions of employment," when read with the definition of fire fighter, means that only employees can collectively bargain. The Unions contend that volunteer fire fighters are not employees and thus to conclude that "the term 'fire fighters' includes volunteers ... would render meaningless the remainder of the collective bargaining law." We are not convinced, however, that volunteer and pool fire fighters of Campbell and Teton counties are not employees, *1068 at least for the purposes of collective bargaining: they receive monetary and other compensation for the work they perform for their respective departments. See Tony & Susan Alamo Found. v. Sec'y of Labor , 471 U.S. 290, 300-02, 105 S.Ct. 1953, 1961-62, 85 L.Ed.2d 278 (1985) (those who work for compensation are "employees" within the meaning of the FLSA [Fair Labor Standards Act], even though they may view themselves as "volunteers" and even though they receive compensation in the form of benefits rather than cash); Mendel v. City of Gibraltar , 727 F.3d 565, 571 (6th Cir. 2013) (hourly compensation paid to volunteer fire fighters was "compensation" under FLSA, did not qualify as a nominal fee, and rendered the fire fighters employees under the FLSA). We are also not convinced that a reading of the statutes requires the conclusion that only "employees" may collectively bargain.
[¶36] Wyo. Stat. Ann. § 27-10-103 states that the union formed by the fire fighters to bargain is the "sole and exclusive" bargaining agent for the department:
The organization selected by the majority of the fire fighters in any city, town, or county shall be recognized as the sole and exclusive bargaining agent for all members of the department , unless and until recognition of such bargaining agent is withdrawn by vote of a majority of the fire fighters.
(Emphasis added.) When we read § 27-10-101 (defining "fire fighters"), § 27-10-102 (granting fire fighters the right to bargain collectively), and § 27-10-103 (union is sole and exclusive bargaining agent) together, we conclude that the legislature intended all members of the department to be represented by the collective bargaining agent. There is no dispute that volunteer (and pool) fire fighters are members of their respective departments. If we were to conclude that "context" required only full-time, career fire fighters to have the right to bargain, then other members of the department, namely volunteers and pool fire fighters, would be left unrepresented. That conclusion would render the language in § 27-10-103, establishing the collective bargaining agent as the "sole and exclusive agent for all members of the department," meaningless.
[¶37] The Unions also argue that we must read the Collective Bargaining for Fire Fighters Act together with the Volunteer Firefighter and EMT Pension Account statutes, Wyo. Stat. Ann. §§ 35-9-616 through 35-9-628 (LexisNexis 2017), to determine the definition of "fire fighter" in the collective bargaining statutes and to conclude that the definition excludes volunteers. The pension account statutes distinguish between career and volunteer fire fighters. Id. The Unions argue that because "both statutes relate to the benefits granted to fire fighters in Wyoming, they have the same general purpose and relate to the same subject, so they must be read and understood with respect to one another." It is a long-standing and "fundamental principle of statutory construction that, to ascertain the meaning of a given law, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as constituting one law." Cuthbertson v. Union Pac. Coal Co. , 50 Wyo. 441, 62 P.2d 311, 314 (1936). However, the "rule that statutes in pari materia should be construed together has the greatest probative force for statutes relating to the same subject and passed at the same legislative session, especially if they were passed or approved or take effect on the same day." 2B Singer, supra , § 51:3. The provisions of the Collective Bargaining for Fire Fighters Act must be read together because they concern the same topic-collective bargaining for fire fighters, and were enacted at the same time. Wyo. Stat. Ann. §§ 27-10-101 through 27-10-109 ; see supra ¶ 4. Although we do not disregard the Volunteer Firefighter and EMT Pension Account statutes, we find that they have less probative force. Further, the fact that the Act includes volunteers because they are "paid members" of their departments, but the Volunteer Firefighter and EMT Pension Account statutes distinguishes between career and volunteer fire fighters, does not create a conflict or a context requiring a different interpretation of the definition of "fire fighter." It merely demonstrates that the legislature is capable of making the distinction between career and volunteer fire fighters when it so intends. In the case of *1069 collective bargaining, it did not intend to make that distinction.
CONCLUSION
[¶38] The definition of "fire fighters" as "paid members of any regularly constituted fire department" is unambiguous and includes volunteer and pool fire fighters in Campbell and Teton counties. Further, the "context" in these consolidated cases does not require a different interpretation. Accordingly, we affirm.

These numbers are taken from CCFD's Volunteer Firefighters application packet, supplied by the Campbell County Joint Powers Board in response to the IAFF Local Union No. 5058's Request for Production No. 2. However, the record contains discrepancies regarding these statistics: The IAFF Local Union No. 5058's Statement of Undisputed Material Facts states that there are 13 career fire fighters and 95 volunteer fire fighters. The Campbell County Joint Powers Board's Statement of Undisputed Material Facts and the Complaint for Declaratory Judgment state that the department consists of 25 career fire fighters and 150 volunteer fire fighters. The Campbell County Joint Powers Board request for Attorney General opinion states that there were 16 full-time fire fighters and 145 volunteers in 2015. These discrepancies are not material.

The JHFD fire fighters are covered by a single death and dismemberment insurance policy, but the terms of the policy classify fire fighters as career personnel and all others, including volunteers.

We have considered the definition of "corporate authorities" contained in the "Definitions" section of the Wyoming Collective Bargaining for Fire Fighters statutes, Wyo. Stat. Ann. § 27-10-101(a)(ii), on several occasions: Int'l Ass'n of Firefighters Local Union No. 279 v. City of Cheyenne , 2013 WY 157, ¶ 10, 316 P.3d 1162, 1166 (Wyo. 2013) ; City of Casper v. Int'l Ass'n of Firefighters, Local 904 , 713 P.2d 1187, 1190 (Wyo. 1986) ; and Nation v. State ex rel. Fire Fighters Local 279, I.A.F.F. , 518 P.2d 931, 932 (Wyo. 1974). In all three cases, the governmental entity contracting with the fire fighters attempted to designate a group to bargain on its behalf with the union. This Court applied the language of the statute and concluded that the bargaining entity must meet the requirements of the definition that it be the entity in the government "whose duty ... it is to establish wages," see City of Cheyenne , ¶ 10, 316 P.3d at 1166, and that it be elected or appointed in some mode by which the inhabitants of the city, town, or county, have given their consent. Id . at ¶ 12, 316 P.3d at 1166-67 ; Nation , 518 P.2d at 933. Interestingly, even though it could have been argued that the context required otherwise (for example, efficiencies in negotiation, expertise on the subject, etc.), none of those cases considered the "unless the context requires a different interpretation" clause. In City of Casper , the Court characterized the definition statute as "mandatory," stating:
Mandatory statutes must be obeyed, and courts have no right to make law contrary to that prescribed by the legislature. [Thomson ] v. Wyoming In-Stream Flow Committee , [ ] 651 P.2d 778, 787 ( [Wyo.] 1982). Courts will not usurp or encroach upon the legislative function. Kennedy v. State , 559 P.2d 1014 (Wyo. 1977) ; Oroz v. Hayes , [ ] 598 P.2d 432 ( [Wyo.] 1979).
713 P.2d at 1190.

See Utah Code Ann. § 34-20a-2 (1995) (defining "fire fighters" as "the full-time, salaried, members of any regularly constituted fire department"); 11 Okl. Stat. Ann. § 51-102 (1978) (defining "fire fighters" as "the permanent paid members of any fire department"); R.I. Gen. Laws § 28-9.1-3(2) (2018) (" 'Fire fighter' means the permanent uniformed members, rescue service personnel of any city or town, emergency medical services personnel of any city or town, any fire dispatchers of any city or town, and all employees with the exception of fire chiefs of any paid fire department in any city or town within the state."); Colo. Rev. Stat. Ann. § 29-5-203(10) (2018) (" 'Firefighter' means an employee of a public employer whose primary duties are directly involved with the provision of fire protection or firefighting services. 'Firefighter' does not include clerical personnel or volunteer firefighters as defined [elsewhere in the statutes].").